**Harold F. PEARSON, III, Plaintiff, Appellee,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE CO., Defendant, Appellant.**

**No. 92–1684.**

United States Court of Appeals, First Circuit.

Heard Oct. 8, 1992.

Decided Nov. 10, 1992.

Robert P. Joy, with whom Benjamin Smith and Morgan, Brown & Joy were on brief, for defendant, appellant.

G. Rosalyn Johnson, with whom Harold Owen Beede and G. Rosalyn Johnson, P.C., were on brief, for plaintiff, appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

SELYA, Circuit Judge.

This hard-fought appeal presents one overarching question of Massachusetts law: could a reasonable jury, viewing the facts in the light most hospitable to the plaintiff, find that the defendant's personnel manual constituted a contract with its employees such that the defendant was bound to rehire the plaintiff, a former at-will employee, following the plaintiff's completion of a leave of absence? Because Massachusetts law requires a negative answer to this inquiry, we reverse the judgment below. Consequently, we need not reach the other issues briefed by the appellant.

I.

*Background*

From 1966 until 1987, plaintiff-appellee Harold F. Pearson, III, worked in the Agri-

cultural Investments Department at John Hancock Mutual Life Insurance Company (Hancock). In late 1986, Pearson made arrangements to take an unpaid six-month leave of absence from the firm. At that time, and before, Hancock maintained a personnel manual for the guidance of administrators and employees. Pearson testified that Hancock held out this manual as authoritative regarding company rules and employee benefits. Pearson also said that, when he arranged for his leave of absence, the Hancock personnel assistant with whom he spoke referred to the manual while explaining the mechanics of the leave. Read most generously to plaintiff, certain language in the manual suggests that Hancock, subject to the discretion of the corporate hierarchs, would try assiduously to place an employee seeking to return from a leave of absence in the job most nearly comparable to his last previous job. Pearson said that, before taking his leave, he told several Hancock officials that he expected to be rehired pursuant to the terms of the manual. Pearson has not argued that remarks made during these conversations—including his initial conversation with the Hancock personnel assistant—themselves constitute a contract.[1]

"Optimism," Voltaire wrote, "is a mania for maintaining that all is well when things are going badly." F.M.A. Voltaire, *Candide* (1759). So it was here. Approximately one month before Pearson's leave was due to expire, he contacted Hancock about resuming his employment. After ordering an investigation to ascertain if appropriate positions were available, and concluding that none were open, one of Hancock's vice-presidents directed that a termination letter be sent to Pearson. He never returned.

In July of 1989, Pearson brought suit in the United States District Court for the District of Massachusetts. He claimed that Hancock had violated his rights under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1988), and sought to recover severance pay allegedly due him. The ERISA count was tried to the bench. The judge found that the plaintiff was not eligible to receive severance benefits and exonerated Hancock of any ERISA violation. That ruling has not been appealed.

In addition to the alleged ERISA violation, the complaint included several pendent state-law claims. The district court jettisoned the majority of the pendent claims.[2] However, Pearson's breach of contract claim survived and went to the jury over the defendant's objection. Apparently believing that Hancock's search for a suitable opening was perfunctory, the jury awarded him damages of $345,000. The jury explicitly found, on special questions, that the personnel manual constituted a contract between the parties and that Hancock breached its contract by failing to rehire Pearson. When the district court denied Hancock's renewed motion for judgment as a matter of law, this appeal ensued.

## II.

### Standard of Review

In reviewing a district court's denial of a motion for judgment as a matter of law, we must examine the evidence and the inferences reasonably to be drawn from it in the light most flattering to the verdict-winner. *See Veranda Beach Club Ltd. Partnership v. Western Surety Co.,* 936 F.2d 1364, 1383–84 (1st Cir.1991); *Wagenmann v.*

---

**1.** In the same vein, we note that, before Pearson departed, the parties signed a memorandum concerning his leave of absence. The memorandum states unequivocally that Pearson was "advised of the difficulties involved in offering an individual with a highly specialized job at [Pearson's] grade level a comparable position" following completion of a leave of absence. The memorandum also memorialized Pearson's understanding that he would "not be reinstated to [his] current position" and that his employ-

ment might possibly "be terminated at the expiration of the leave of absence." Not surprisingly, Pearson has not suggested that this memorandum constitutes a source of rights arising in his favor, and we do not consider either that possibility or theories alien to Pearson's basic breach of contract claim. *See infra* note 5.

**2.** Pearson has not appealed from the dismissal of these claims.

*Adams,* 829 F.2d 196, 200 (1st Cir.1987). This means that "[w]e take the facts as shown by the [winner's] evidence and by at least [as much] of the [loser's] uncontradicted and unimpeached evidence as, under all the circumstances, the jury virtually must have believed." *Karelitz v. Damson Oil Corp.,* 820 F.2d 529, 530 (1st Cir.1987). If, without gauging witness credibility, resolving testimonial conflicts, or weighing the evidence, we ascertain that the proof, even when viewed through these rose-colored glasses, will not rationally support a finding of liability, then we must reverse the district court's refusal to enter judgment as a matter of law. *See Hendricks & Assocs., Inc. v. Daewoo Corp.,* 923 F.2d 209, 214 (1st Cir.1991); *Wagenmann,* 829 F.2d at 200.

### III.

### *Analysis*

■ The parties agree that Massachusetts law governs the breach-of-contract claim. Pearson argues that, applying Massachusetts law, the personnel manual formed the basis of an enforceable agreement between himself and Hancock and that, pursuant to the terms thereof, Hancock had an obligation to rehire him following his leave of absence. In contrast, the centerpiece of Hancock's appeal is the proposition that the personnel manual did not constitute a binding contract. On the facts of this case, we find Hancock's proposition to be compelling.

### A

The cornerstone of our analysis is the decision of the Massachusetts Supreme Judicial Court (SJC) in *Jackson v. Action for Boston Community Development, Inc.,* 403 Mass. 8, 525 N.E.2d 411 (1988). *Jackson* involved a former employee who challenged his discharge as violative of the grievance procedures limned in the employer's personnel manual. In determining

that no reasonable juror could find that the manual formed the basis of an express or implied contract altering Jackson's status as an at-will employee, the SJC emphasized six factors; viz.: (1) the employer retained the right unilaterally to modify the manual at any time; (2) there was no firm commitment concerning the employer's course of conduct, as the manual's stated purpose was merely to provide "guidance" concerning the employer's "policies"; (3) there was no evidence that employer and employee had negotiated concerning the language contained in the manual; (4) there was no evidence that the employer had called "special attention" to the manual; (5) there was no evidence that, when hired or, indeed, thereafter, the employee had manifested his assent to the manual's terms; and (6) the manual neither stipulated nor identified a term of employment. *Id.* 525 N.E.2d at 415–16. To paraphrase, the SJC indicated that, in order to determine whether the terms of an employer's personnel manual or kindred document constitutes a binding contract, an inquiring court must consider whether or not the manual's terms were (1) unilaterally modifiable, (2) merely hortatory, (3) negotiated in a particular instance, (4) specially emphasized by the employer, (5) seasonably accepted by the employee, and (6) characterizable as specifying some period of employment (or, alternatively, some definitive limit on the otherwise fluid nature of at-will employment).[3]

We recently discussed the correspondence between the *Jackson* factors and basic principles of contract law in *Biggins v. Hazen Paper Co.,* 953 F.2d 1405 (1st Cir.), *cert. granted on other grounds,* —— U.S. ——, 112 S.Ct. 2990, 120 L.Ed.2d 868 *cross petition for cert. denied,* —— U.S. ——, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992). There, we held that, when an employee seeks to show that a personnel manual forms the basis of an employment contract, Massachusetts law requires him to "establish all of the elements ordinarily necessary

---

**3.** We do not read *Jackson* as suggesting that this list of factors is necessarily exclusive. Rather, *Jackson* envisions focusing the lens of inquiry on "the conduct of the parties, and their relation," under the totality of the circumstances in

a given case. *Jackson,* 525 N.E.2d at 416. Here, however, neither the plaintiff nor the district court suggested that the equation should be reshaped to include any integers beyond those considered by the *Jackson* court.

for the formation of a contract." *Id.* at ——, 112 S.Ct. at 1422. Because Biggins had failed to demonstrate either the occurrence of negotiations anent the manual's terms or the employer's calling of special attention to the manual prior to the time it fired him, we reversed the district court's denial of the defendant's motion for judgment n.o.v. *Id.* at ——, 112 S.Ct. at 1423–24.

We think that these decisions carry the day for Hancock. For one thing, although the *Jackson* court took great pains to stress that its decision was circumstance-specific, 525 N.E.2d at 414–16, the circumstances here seem sufficiently similar to warrant an identical outcome. For another thing, *Biggins* augurs poorly for Pearson's plight. In *Biggins*, two of the six *Jackson* factors were missing. We termed the absence of these two factors "fatal to [the employee's] claim." *Biggins*, 953 F.2d at 1424. Here, the plaintiff finds himself in a much deeper hole: the uncontroverted evidence establishes that no fewer than four of the *Jackson* factors are lacking. We review the tally.

First, the personnel manual upon which Pearson relies explicitly states that Hancock "retains the right to revise, suspend, or cancel in whole or in part any of the policies appearing in this manual without advance notice." What is more, the uncontradicted, unimpeached evidence establishes beyond peradventure that Hancock unilaterally exercised this right several times during Pearson's tenure. Second, the manual is not couched in language traditionally associated with firm commitments. Rather, it says that it "provides a description" of "personnel policies and procedures." Third, there is no evidence in the record suggesting that Pearson and Hancock negotiated concerning the contents of the manual—or, indeed, that any employee was consulted in that regard. Fourth, the manual sets forth no term of employment.

B

Realizing that the facts of this case are a carrion call to the vulturous flock of factors enunciated in *Jackson* and echoed in *Biggins*, the plaintiff gamely asserts that *Jackson* is an avocet of a different plume. He theorizes that, in *Jackson*, the employee was attempting to establish that the manual formed the basis of an employment contract for some term greater than "at will." Thus, Pearson's thesis runs, the employee had to overcome many obstacles, including the "general rule [that], where an employment contract ... contains no definite period of employment, it establishes employment at will." *Jackson*, 525 N.E.2d at 412. Pearson argues that in this case, unlike in *Jackson*, he does not claim that the manual alters his status as an at-will employee. Rather, he concedes his status, but wields the manual as a means of proving Hancock's contractual duty to provide a benefit described therein, namely, the benefit of being rehired after taking a leave of absence.[4]

Pearson's argument is far from epigonic; to our knowledge, it remains unaddressed in the relevant case law. Nevertheless, the district court endorsed it. We do not. No less an authority on state law than the Massachusetts Appeals Court has recently rejected this argument *sub silentio*, citing *Jackson* as the mainstay of its conclusion that the equal opportunity policy announced in an employee handbook "did not establish contractual rights which would support an action for breach of contract." *Cherella v. Phoenix Technologies, Ltd.*, 32 Mass.App.Ct. 919, 586 N.E.2d 29, 31 (1992). *See also Coleman v. Boston Edison Co.*, 33 Mass.App.Ct. 1111, 601 N.E.2d 494 (1992) (applying *Jackson* to defeat claim for increased salary based on management salary program).

There is, moreover, a fundamental flaw in plaintiff's approach. The definitional

---

**4.** Pearson also tries to distinguish *Jackson* as a case in which the plaintiff relied only upon the employer's dissemination of the manual and not, as here, upon additional factors such as the conduct of the employer in conformity with the manual. This effort will not withstand the mildest scrutiny. In *Jackson*, the SJC expressly noted "the defendant's adherence to the grievance procedures," but found evidence of such a practice insufficient to overcome the inadequacies in the plaintiff's case. *Jackson*, 525 N.E.2d at 415.

hallmark of employment at will is its terminability by "either the employee or the employer without notice, for almost any reason or for no reason at all." *Jackson*, 525 N.E.2d at 412 (collecting cases). To be sure, there are exceptions, inasmuch as the law traditionally frowns upon certain specific reasons for terminating employment relationships. The fact that one's employment is at will does not mean that his employer can terminate him for invidiously discriminatory reasons, *see, e.g.*, Mass.Gen. Laws Ann. ch. 151B, § 4 (West 1982 & Supp.1992), or reasons which countervail some well established public policy, *see, e.g.*, *DeRose v. Putnam Management Co.*, 398 Mass. 205, 496 N.E.2d 428, 430–31 (1986), or reasons which stem from the employer's nefarious desire to deprive the employee of benefits otherwise due him, *see, e.g.*, *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251, 1255–56 (1977). But, absent proof of a prohibited reason, the ordinary rule pertaining to termination of employment at will applies. *See Wright v. Shriners Hospital for Crippled Children*, 412 Mass. 469, 589 N.E.2d 1241, 1244 (1992) (categorizing "prohibited reason" situations as "exceptions to th[e] general rule").

Such proof is utterly lacking here. Pearson has not suggested, let alone proved, that Hancock possessed an improper reason for not rehiring him. The undisputed fact is that Hancock did no more than terminate (or, in a sense, refuse to reinstitute) an at-will employment relationship. So viewed, the instant case reduces to a prototypical employment case in which one party has exercised its legal right to end a relationship with no stated term. There is simply no evidence upon which a reasonable jury could find that Hancock's actions were in derogation of a contractual obligation owed to Pearson.

### C

It is important to emphasize that this is not a situation in which the plaintiff produced evidence that the defendant terminated an at-will employment relationship in order to deprive an employee of some other right independently due him. *See, e.g.*, *Fortune*, 364 N.E.2d 1251; *McCone v. New England Tel. & Tel. Co.*, 393 Mass. 231, 471 N.E.2d 47, 49–50 (1984); *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 429 N.E.2d 21, 29 (1981). Rather, it is a situation in which the plaintiff contends that, notwithstanding the at-will nature of the employment relationship, the act of discharge (or its functional equivalent, the refusal to reinstate), in and of itself, constituted a deprivation of a contractually assured right. In other words, Pearson, while admitting that he was an at-will employee, is claiming that the company's personnel manual somehow conferred upon him a contractual right to remain in Hancock's employ. Not only is such a "right" inconsistent with the gravamen of at-will employment (a concept which enables either party to scrap the relationship at any time, without *notice or cause*), but plaintiff's articulation of the right, brought full circle, places it squarely within the purview of *Jackson* and its progeny.[5]

The situation which would have obtained if Pearson's rationale were adopted illustrates the legal impracticality of the distinction that he advocates. To skirt the term-of-employment obstacle, Pearson would have us hold that Hancock promised only that it would rehire him—not that it would retain him. But, if his employment remained at will, Hancock would remain free to fire him simultaneous with, or perhaps milliseconds after, the act of reinstating him. We think this scenario forcefully

---

**5.** It is important to note that this appeal is limited to Pearson's suit for breach of contract. In suits based on other theories, the effect of *Jackson*'s holding regarding terms contained in employee manuals may be somewhat diluted. *See, e.g.*, *Sinkevich v. School Committee of Raynham*, 403 Mass. 420, 530 N.E.2d 173, 175 (1988) (in action for wrongful discharge, the employer's personnel manual could potentially confer an otherwise absent right to resign with minimal notice); *Corion Corp. v. Chen*, (D.Mass. 1991) [1991 WL 280288 at *7–8] (holding the terms of a personnel manual to be enforceable on a theory of promissory estoppel); *cf. Maddaloni v. Western Mass. Bus Lines, Inc.*, 386 Mass. 877, 438 N.E.2d 351, 355 (1982) (noting possibility of recovery in quantum meruit).

indicates that the employer's putative "promise" to rehire was at best illusory and, in any event, lacked the mutuality required to constitute a binding contract. *See, e.g., Jackson,* 525 N.E.2d at 415 (suggesting that merely hortatory or unilaterally modifiable "promises" are unenforceable as illusory); *Gill v. Richmond Co-Operative Ass'n, Inc.,* 309 Mass. 73, 34 N.E.2d 509, 513–14 (1941) (where one party committed itself to purchase only so much as it wanted, neither party was bound by the agreement due to want of mutuality); *Bernstein v. W.B. Mfg. Co.,* 238 Mass. 589, 131 N.E. 200, 201 (1921) (because one party remained free to exit at any time, the agreement violated "the accepted legal maxim that ... both of the mutual promises must be binding or neither will be").

## IV.

### Conclusion

 In the last analysis, the plaintiff invites us to build a legal wall separating suits alleging that grievance procedure provisions in a personnel manual constitute a contract from suits alleging that rehire provisions constitute a contract. Accepting this invitation would require us to erect an eclectic structure without the benefit of either state-law blueprints or even the slightest intimation by the SJC that Massachusetts jurisprudence might be receptive to so unprecedented a design. We are unwilling, however, to tinker with seemingly settled state law. Nor is our renitency unfair to the plaintiff: after all, Pearson deliberately chose to bring this action in federal court when the state courts were equally available to him.[6] A litigant who seeks out a federal forum when a state-court forum is equally available to him cannot justifiably complain if the federal court manifests great caution in blazing new state-law trails. *See Ryan v. Royal Ins. Co.,* 916 F.2d 731, 744 (1st Cir.1990);

*Porter v. Nutter,* 913 F.2d 37, 41 (1st Cir. 1990).

We need go no further. On the record before us, the plaintiff has failed sufficiently to differentiate his case from those of the unsuccessful plaintiffs in *Jackson* and *Biggins.* Thus, these precedents apply to determine whether the employment manual at issue here elevated Pearson's status above that of an at-will employee. If that potential did not exist, Pearson's case evaporates. Because, as we have already explained, the record is devoid of evidence that would enable Pearson to vault this hurdle, the district judge erred in denying Hancock's motion for judgment as a matter of law.

*Reversed.*

---

**6.** Plaintiff's counsel suggested at oral argument that Pearson's suit was brought in federal court because it included an ERISA count along with the salmagundi of state-law claims. But, the state courts have concurrent original jurisdiction over ERISA claims which are brought by participants to recover benefits due under employee welfare benefit plans. *See* 29 U.S.C. § 1132(e)(1). Pearson's suit is of this genre.