991 F.2d 786
 62 Fair Empl.Prac.Cas. (BNA) 160, 8 IER Cases 704
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
David FRANKINA, Plaintiff, Appellant,
v.
FIRST NATIONAL BANK OF BOSTON, Defendant, Appellee.
 No. 92-2156.
 United States Court of Appeals,
First Circuit.
 April 14, 1993
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
 Denise M. Leydon with whom Weston, Patrick, Willard & Redding was on brief for appellant.
 Richard P. Ward with whom Robert B. Gordon and Ropes & Gray were on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Selya, Circuit Judge, Bownes, Senior Circuit Judge, and Cyr, Circuit Judge.
 Per Curiam.
 
 
 1
 The First National Bank of Boston ("Bank") terminated the employment of appellant David Frankina pursuant to a reduction in force. Frankina sued the Bank, asserting claims for age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, and the Massachusetts Fair Employment Practices Act, Mass. Gen. L. ch. 151B; breach of an alleged lifetime-employment contract; and breach of an alleged preferential-rehiring agreement. The district court granted summary judgment. We affirm.
 
 
 2
 * BACKGROUND
 
 
 3
 We relate the facts in the light most favorable to appellant. See Newport Plaza Assoc. v. Durfee Attleboro Bank, F.2d, (1st Cir. 1993), No. 92-1444, slip op. at 6 (1st Cir. Feb. 16, 1993). In 1962, Herb Ericson, a Bank personnel officer, hired David Frankina as a Security-Cage Clerk. Ericson represented that Frankina would have a job for life unless he committed a criminal act against the Bank. Ericson also told Frankina that the Bank had never laid off an employee in its 200-year history. Throughout his twenty-seven year tenure with the Bank, Frankina became aware of no employee who was terminated except for criminal conduct.
 
 
 4
 In 1989, the Bank launched a large-scale reduction in its work force due to mounting losses in its Treasury and Banking Services operation. The Bank completely reorganized the Banking Services component of the department, reconfiguring approximately 252 operational functions into approximately 135 functions. As a result, 119 positions were eliminated. Thomas Keane, Senior Operations Manager of the Capital Asset Services Department, determined that it was necessary to eliminate two of the seven positions in the Control Unit to eliminate functional redundancy.
 
 
 5
 After reviewing recent employee performance evaluations, and based on his personal knowledge of employee work habits, Keane selected two Control Unit employees for dismissal: a thirty-five year old, and Frankina, then forty-seven. Keane concluded that the thirty-five year old lacked the necessary skills and had the least experience, and that Frankina was the least qualified employee in the Unit. Keane found that Frankina had relatively poor work habits, experienced difficulty in completing assigned tasks, and was least well-suited to perform the work duties in the reconfigured organization. Four of the five Control Unit employees who were retained were younger than Frankina.[1]
 
 
 6
 On May 19, 1989, Keane and Gerard Demone, Senior Human Resources Manager, met with Frankina to inform him of the layoff, describe the severance benefits, and offer professional job-search assistance. Demone told Frankina that job applications from laid-off employees would be given preferential treatment in the Bank's hiring process. Frankina subsequently applied for more than fifty positions with the Bank.
 
 II
 DISCUSSION
 
 7
 A virtual "carbon copy" suit was brought by another former Bank employee in Goldman v. First Nat'l Bank of Boston, F.2d (1st Cir. 1993), No. 92-1773 (1st Cir. Feb. 12, 1993). Thus, we rely extensively on our Goldman analysis. In Goldman, we defined the applicable summary judgment standard as follows:
 
 
 8
 We review a grant of summary judgment de novo, employing the same criteria incumbent upon the district court in the first instance. Pedraza v. Shell Oil Co., 942 F.2d 48, 50 (1st Cir. 1991), cert. denied, U.S., 112 S. Ct. 993 (1992). Summary judgment is appropriate where the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Canal Ins. Co. v. Benner, 980 F.2d 23, 25 (1st Cir. 1992); see also Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, U.S., 112 S. Ct. 2965 (1992). The nonmoving party "may not rest upon the mere allegations or denials of the ... pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There is no trialworthy issue unless there is enough competent evidence to enable a finding favorable to the nonmoving party. Id. at 249 (citing First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968)). Moreover, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).
 
 
 9
 Goldman, slip op. at 4-5.
 
 A. Age Discrimination Claims
 
 10
 Frankina maintains that he adduced enough evidence to generate a trialworthy issue as to whether the termination of his employment was motivated by age discrimination, and argues that the district court impermissibly weighed the competing evidence rather than viewing it in the light most favorable to him.
 
 1. The Burden-Shifting Paradigm
 
 11
 The plaintiff bears the ultimate burden of proving that his age was the determinative factor in his discharge. Mesnick v. General Electric Co., 950 F.2d 816, 823 (1st Cir. 1991), cert. denied, U.S., 112 S. Ct. 2965 (1992). "Absent direct evidence of age discrimination, the familiar burden-shifting framework established in [McDonnell Douglas ] comes into play." Goldman, slip op. at 6. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). As we explained in Goldman:
 
 
 12
 First, the plaintiff must make a prima facie showing of discrimination; that is, [Frankina] must demonstrate that he (1) was at least forty years of age, (2) met the employer's legitimate job performance expectations, (3) experienced adverse employment action, and (4) was replaced by a person with roughly equiva lent job qualifications. A plaintiff whose employment was terminated in the course of a reduction in force need not demonstrate that he was replaced, but may show that the employer did not treat age neutrally or that younger persons were retained in the same position.
 
 
 13
 Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the employee, and the burden of production shifts to the defendant-employer to articulate some legitimate, nondiscriminatory reason for the termination. The burden of persuasion remains with the plaintiff-employee at all times.
 
 
 14
 The presumption of unlawful age discrimination generated by the plaintiff-employee's prima facie showing dissipates, however, provided the employer sustains its burden of production; the plaintiff-employee must then demonstrate that the proffered reason for the adverse employment action was simply a pretext for age discrimination. The plaintiff must do more than cast doubt on the employer's justification for the challenged action; there must be a sufficient showing that discriminatory animus motivated the action. Direct or indirect evidence of discriminatory motive may do, but the evidence as a whole must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus.
 
 
 15
 Under First Circuit caselaw, the plaintiff-employee must adduce minimally sufficient evidence of pretext and discriminatory animus. A showing that the employer's justification was not the actual motive may be enough if the facts and circumstances raise a reasonable inference of age discrimination. Nevertheless, the plaintiff-employee cannot avert summary judgment if the record is devoid of [both ] direct and circumstantial evidence of discriminatory animus on the part of the employer.
 
 
 16
 Goldman, slip op. at 6-8 (internal citations and quotation marks omitted).
 
 
 17
 It is not disputed that Frankina made out a prima facie age discrimination claim, nor that the Bank articulated a nondiscriminatory motive for Frankina's dismissal, i.e., that economic considerations necessitated a reduction in force and Frankina was the "least qualified employee" in his unit. The dispute on appeal centers on the third stage of the McDonnell Douglas analysis. The district court acknowledged that Frankina presented some evidence to counter the Bank's characterization of him as a poor performer, but ruled that Frankina presented insufficient evidence of pretext and discriminatory animus. Accordingly, the Bank was awarded summary judgment on Frankina's state and federal age-discrimination claims.[2]
 
 2. Evidence of Pretext
 
 18
 "In assessing pretext, [our] 'focus must be on the perception of the decisionmaker,' that is, whether the employer believed its stated reason to be credible." Mesnick, 950 F.2d at 824 (quoting Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986)) (emphasis added). Frankina does not dispute that economic considerations necessitated a reduction in force, but argues that he produced sufficient evidence to rebut the Bank's contention that he was the least qualified employee in his unit.
 
 
 19
 Frankina produced ample evidence that the Bank did not consider his work performance unsatisfactory in absolute terms: he was given merit salary increases on a regular basis throughout his tenure; none of his performance evaluations indicated that his job performance was unacceptable; his overall performance rating in 1986 was "outstanding," the highest rating available; and he received no warnings relating to his work performance. The Bank's justification for Frankina's discharge, however, was not that his performance was unsatisfactory in an absolute sense, but that he was the least qualified employee in the Control Unit. Thus, refutation of the Bank's proffered justification required evidence permitting a trier of fact reasonably to conclude that Frankina's abilities and qualifications were equal or superior to employees who were retained. Goldman, slip op. at 10. As Frankina made no such evidentiary showing in the district court, he failed to demonstrate a trialworthy issue.[3]
 
 3. Evidence of Age Animus
 
 20
 "Evidence of age animus need not be of the 'smoking gun variety,' but the totality of the circumstances must permit a reasonable inference that the employer's justification for the challenged action was a pretext for age discrimination." Goldman, slip op. at 11 (quoting Connell v. Bank of Boston, 924 F.2d 1169, 1175 (1st Cir.), cert. denied, U.S., 111 S. Ct. 2828 (1991)). Frankina contends that an inference of discriminatory animus on the part of the Bank arises from the following evidence: Frankina and six other former Bank employees dismissed pursuant to the reduction in force were the oldest employees and had the longest service records in their respective units; the termination of older, more costly employees would optimize the cost reductions achieved through the reduction in force; of the 119 terminated employees, 41% were over forty years of age, but only 24% of those subsequently rehired were over forty; under a new retirement plan introduced in 1989, which required the Bank annually to contribute a percentage of each employee's salary to a "Cash Balance" account, the Bank deposited a decreasing percentage of salary to an employee's account as the employee reached the upper service brackets; and the Bank disbanded the "Quarter Century Club," a Bank-sponsored social organization for employees with twenty-five years or more of service.
 
 
 21
 We considered the identical evidence in Goldman, and concluded that:
 
 
 22
 at best the record reveals that a small number of those discharged were among the older employees in their respective units, that the Bank implemented a new pension plan which has in no measure been shown to have been disadvantageous to older employees, and that the Bank stopped funding the Quarter Century Club. The gap between this evidence and an inference of age discrimination could only be bridged by impermissible inference.
 
 
 23
 Id. at 15-16. We reach the same conclusion here, based on the grounds detailed in Goldman. See id. at 11-16. As the evidence presented in the district court was insufficient to enable a factfinder reasonably to conclude that the articulated reason for Frankina's termination was pretextual or that his termination was motivated by age animus, we affirm the grant of summary judgment on the age discrimination claims.[4]
 
 B. Breach of Lifetime Employment Contract
 
 24
 Next, Frankina argues that summary judgment was improper on his claim for breach of a lifetime employment contract. The district court found that Frankina failed to generate a trialworthy issue as to whether the person who hired Frankina possessed actual or apparent authority to bind the Bank to a lifetime employment contract. We agree.
 
 
 25
 Frankina maintains that Bank personnel officer Herb Ericson offered him lifetime employment by representing that the Bank had never laid off employees and that Frankina would have a job for life unless he committed a criminal act against the Bank. Moreover, he argues, the concept of lifetime employment was reinforced throughout his tenure at the Bank as he never knew of an employee being dismissed except for criminal conduct. For present purposes, we assume, without deciding, that Ericson's representations were sufficient to impart an offer of lifetime employment to Frankina.
 
 As we stated in Goldman, however:
 
 26
 Under Massachusetts law, a lifetime employment contract cannot be found absent evidence that it was made or ratified by an officer or agent with actual or apparent authority to bind the employer to a lifetime contract. See Rydman v. Dennison Mfg. Co., 373 Mass. 855, 366 N.E.2d 763 (1977); Porshin v. Snider, 349 Mass. 653, 654, 212 N.E.2d 216, 217 (1965); Thalin v. Friden Calculating Mach. Co., 338 Mass. 67, 70, 153 N.E.2d 658, 660 (1958); Simonelli v. Boston Hous. Auth., 334 Mass. 438, 440-41, 137 N.E.2d 670, 672-73 (1956).
 
 
 27
 Id. at 16-17. As the present record contains no evidence that the Bank invested Ericson with actual authority to extend a binding offer of lifetime employment to anyone, we need only determine whether Frankina has demonstrated a genuine factual dispute material to the issue of apparent authority.
 
 
 28
 Apparent authority "results from conduct by the principal which causes a third person reasonably to believe that a particular person ... has authority to enter into negotiations or to make representations as his agent." Hudson v. Massachusetts Property Ins. Underwriting Ass'n, 386 Mass. 450, 457, 436 N.E.2d 155, 159 (1982) (quoting W.A. Seavey, Agency § 8D at p. 13 (1964)) (emphasis added); accord Goldman, slip op. at 17. Apparent authority " 'cannot be established by the putative agent's own words or conduct, but only by the principal.' " Sheinkopf v. Stone, 927 F.2d 1259, 1269 (1st Cir. 1991) (quoting Sheldon v. First Fed. Savings & Loan Ass'n, 566 F.2d 805, 808 (1st Cir. 1977)) (emphasis added). Thus, as in Goldman, slip op. at 17, we must examine the record for evidence of conduct on the part of the Bank that could have led Frankina reasonably to believe that Ericson was authorized to extend an offer of lifetime employment.
 
 
 29
 "A person appointed to a position with generally recognized functions may be found to possess apparent authority to perform the duties ordinarily entrusted to one occupying that position." Id. (citing Restatement (Second) of Agency § 27 cmt. a (1958)). As a personnel officer, Ericson undoubtedly had actual or apparent authority to hire Bank employees. Under Massachusetts law, however, ordinary authority to hire is insufficient to bind an employer to a lifetime employment contract. Id. at 18-19 (citing cases). Thus, holding Ericson out as its agent for general hiring purposes did not constitute conduct warranting an objectively reasonable belief that Ericson was authorized to offer lifetime employment with the Bank. See id. at 19.
 
 
 30
 Under rare circumstances, apparent authority to enter a lifetime employment contract may be found where it is customary for a particular officer or agent to make lifetime contracts. Id. The Bank submitted competent affidavits attesting that Ericson had no actual authority to bind the Bank to a lifetime contract and that no employee has a lifetime contract with the Bank. Nonetheless, Frankina contends that an inference that lifetime contracts were commonplace at the Bank arises from the "widely discussed fact" that, prior to 1989, no employee had ever been terminated other than for criminal conduct. Under Massachusetts law, however, "ifetime contracts are [considered] extraordinary in their nature and strong proof is required to establish their due formation." Gregory v. Raytheon Serv. Co., 27 Mass. App. Ct. 1170, 1171, 540 N.E.2d 694, 695 (1989); see Goldman, slip op. at 20. "Although widespread knowledge that the Bank had never laid off an employee except for criminal conduct might prompt the legitimate belief that employment at the Bank was relatively secure, it cannot be considered competent proof, let alone 'strong proof,' that any Bank employee had a lifetime employment contract." Id. (internal citation omitted). Absent evidence that any employee-at any level under any circumstances-had a lifetime contract with the Bank, we must conclude that a rational factfinder could not reasonably find that lifetime employment contracts with the Bank were customary. Id.
 
 
 31
 Although Frankina correctly asserts that an agent's authority to make binding promises is a question of fact, see Eastern Renovating Corp. v. Forhan, 391 F. Supp. 204, 205 (D. Mass. 1975); Salem Bldg. Supply Co. v. J.B.L. Constr. Co., 10 Mass. App. Ct. 360, 365, 407 N.E.2d 1302, 1306 (1980), he presented no evidence which would permit a factfinder reasonably to conclude, consistent with Massachusetts law, that Ericson had actual or apparent authority to bind the Bank to a lifetime employment contract. Nor did Frankina adduce evidence that anyone else, with actual or apparent authority to bind the Bank, subsequently ratified any unauthorized offer of lifetime employment. See Goldman, slip op. at 20-21. As no trialworthy issue was raised, summary judgment was proper on the lifetime employment claim.[5]
 
 C. Breach of Preferential Hiring Contract
 
 32
 Finally, Frankina contends that there is a disputed issue of material fact as to whether the Bank breached a promise to accord preferential treatment to any reemployment application he might file. Although the Bank denies any such promise, we assume for present purposes, as did the district court, that such a promise was made. The district court ruled that any such promise would have lacked the consideration required to support a contract under Massachusetts law. Frankina contends that he relied to his detriment on the Bank's promise. He represents that, during the first six months after he was discharged, he concentrated his job-search efforts on obtaining reemployment with the Bank.
 
 
 33
 Under Massachusetts law, a contract may be based on a promise supported by reliance. Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 760-61, 384 N.E.2d 176, 179 (1978) ("When a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract', and it is enforceable pursuant to a 'traditional contract theory' antedating the modern doctrine of consideration"). However, " 'the promisee must actually rely on the promise,' and 'the reliance must have been induced by the promise.' " Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, 442 n.13, 597 N.E.2d 1017, 1023 n.13 (1992) (quoting E.A. Farnsworth, Contracts § 2.19 at 95-96 (1982)). Frankina presented no competent evidence that he relied on the alleged promise.
 
 
 34
 Although Frankina's affidavit represents that he concentrated his job-search efforts, for the first six months, on obtaining reemployment with the Bank, this ambiguous statement is contradicted by his deposition testimony.[6] On deposition, Frankina testified that he diligently pursued employment both inside and outside the Bank "from the day [he] was let go to the present," that he was not at any time less than diligent in looking for work either inside or outside the Bank, that between May 1989 and May 1990 he applied to over 200 employers, and that he applied for jobs all over the United States and Canada. Viewed in the context of the immediate and comprehensive job search he described at deposition, the vague representation in Frankina's affidavit-that during the first six months he "focused" and "concentrated" on getting reemployed by the Bank-was insufficient to generate a trialworthy issue on the detrimental reliance claim. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990); see also Babrocky v. Jewel Food Co., 773 F.2d 857, 861-62 (7th Cir. 1985) (material issue of fact cannot be demonstrated by submitting affidavit contradicting sworn deposition testimony); Foster v. Arcata Assoc., Inc., 772 F.2d 1453, 1462 (9th Cir. 1985), cert. denied, 475 U.S. 1048 (1986) (same); S. G. Supply Co. v. Greenwood Int'l, Inc., 769 F. Supp. 1430 (N.D. Ill. 1991) (same); Lowery v. Airco, Inc., 725 F. Supp. 82, 85-86 (D. Mass. 1989) (same). Accordingly, summary judgment on the claim for breach of a preferential hiring contract was proper.
 
 
 35
 Affirmed; no costs to either party.
 
 
 
 [1]
 One retained employee was forty-nine years old at the time of the reorganization, two were forty-one, one was thirty-seven, and one was thirty-one. Frankina suggests that the forty-nine year old was not similarly situated because he served in a managerial capacity
 
 
 [2]
 The complaint alleged parallel claims under the ADEA and its Massachusetts counterpart, Mass. Gen. L. ch. 151B. On appeal, Frankina asserts for the first time that Massachusetts applies a less onerous standard of proof to claims brought under the Massachusetts statute than this court applies to ADEA claims, see infra note 4, and that his state claim therefore must be addressed separately. However, Frankina did not distinguish these claims in his opposition to summary judgment, and the district court analyzed them collectively, noting only that "courts apply the same analysis to state and federal discrimination claims." We decline to address this newfound claim, as "theories not raised squarely in the district court cannot be surfaced for the first time on appeal." McCoy v. Massachusetts Inst. of Technology, 950 F.2d 13, 22 (1st Cir. 1991), cert. denied, U.S., 112 S. Ct. 1939 (1992); see also Poliquin v. Garden Way, Inc., F.2d (1st Cir. 1993), Nos. 92-1115, 92-1116, slip op. at 8 (1st Cir. Mar. 24, 1993) (explaining that in the "winnowing process" of litigation, the raise-or-waive rule enables courts to "narrow what remains to be decided[;][i]f lawyers could pursue on appeal issues not properly raised below, there would be little incentive to get it right the first time and no end of retrials"). Although the raise-or-waive rule may be relaxed in an exceptional case when a miscarriage of justice would otherwise result, see Johnston v. Holiday Inns, Inc., 595 F.2d 890, 894 (1st Cir. 1979) (quoting Dobb v. Baker, 505 F.2d 1041, 1044 (1st Cir. 1974)), our holding that Frankina failed to adduce sufficient evidence of pretext, see infra Part II.A.2, would make summary judgment proper even under the lessonerous standard of proof urged by Frankina
 
 
 [3]
 Although Frankina argues on appeal that his performance evaluations in 1987 and 1988 were equivalent to those of a younger colleague who was retained, he waived the argument by failing to raise it below. See supra note 2
 
 
 [4]
 Frankina argues that our cases place a more onerous burden on an ADEA plaintiff than that envisioned by the Supreme Court in McDonnell Douglas and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). As we rejected this argument in Goldman, we do not discuss it here. See Goldman, slip op. at 8 n.4
 
 
 [5]
 Accordingly, we need not address the claim that Frankina changed his position in reliance on a reasonable belief that Ericson had authority to offer lifetime employment
 
 
 [6]
 The affidavit allows that Frankina "made other attempts outside the Bank during that time, [but that his] focus for those first six months was on getting back into the Bank." We cannot credit, as competent evidence of detrimental reliance, Frankina's vague and conclusory statement that he "concentrated" and "focused" his efforts on obtaining reemployment. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (summary judgment not forestalled by "conclusory allegations, improbable inferences, and unsupported speculation")