Gershengorn, J.
This action arises out of the defendant, Community Newsdealers, Incorporated’s (“CNI”) terminating the employment of the plaintiff, Devin Gladstone (“Gladstone”). Gladstone’s complaint contains claims against CNI and the defendant, The Globe Newspaper Company (“Globe”), for breach of contract (Count I) and violation of the Civil Rights Act, G.L.c. 12, §§11H, 111 (Count II).
The Globe and CNI move for summary judgment on all claims. CNI specifically argues that it is entitled to judgment on Gladstone’s breach of contract claim because (1) Gladstone was an employee at will, (2) Gladstone signed an employment contract which expressly stated he “could be terminated at any time for any reason,” (3) and CNI’s internal personnel policies do not constitute contracts of employment. CNI argues for judgment on Gladstone’s claim for civil rights violations on the grounds that Gladstone (1) fails to identify a secured right, and (2) fails to allege facts which constitute threats, intimidation or coercion as required by G.L.c. 12, §§11H, 111. The Globe, in addition to adopting the above grounds of CNI, argues that it is entitled to judgment as a matter of law because there is no evidence that Gladstone was employed at any time by the Globe. For the following reasons, the defendants’ motion is ALLOWED.
BACKGROUND
The undisputed facts dispositive of the defendants’ motion are as follows. The Globe publishes The Boston Globe. CNI employs approximately 350 full-time employees and is in the business of distributing The Boston Globe. The Globe owns three hundred (300) shares of CNI common stock. While CNI and the Globe are affiliates, each engages in separate businesses and each maintains individual and different principal offices, payroll departments, human resources policies, and employee management practices.
Gladstone held two different positions while employed by CNI. He was originally employed as a Telemarketer. On January 20, 1993, Gladstone was promoted to the position of Telemarketing Supervisor. At the time of hire for each of these positions, Gladstone filled out and signed an application for employment and was subject to a three-month probationary period.
Gladstone participated in a two-week training program for the position of Telemarketing Supervisor. Part of this training was devoted to sessions on the use of the CNI personnel policies and guidelines. Gladstone was informed to follow the rules provided in these policies and guidelines in dealing with employees under his supervision. He was further instructed that he could not terminate an employee until he had utilized the policy and contacted his manager and the Human Resources Manager.
In the summer of 1993, Gladstone began dating his immediate supervisor, Marci Reynolds (“Reynolds”). CNI’s Sales and Marketing Manager, Robert Saurer (“Saurer”) became aware of this involvement in December 1993. Gladstone was unaware of CNI’s concern about the relationship until March 1994, when Saurer gave Gladstone an ultimatum to either accept a transfer or face termination effective April 18, 1994. The alternative jobs offered to Gladstone were for lower paying positions than the Telemarketing Supervisor position. Gladstone did not opt for the job transfer and was fired on April 18, 1994.
DISCUSSION
Defendants have filed a motion to dismiss, pursuant to Mass.R.Civ.P. 12(b)(6), or in the alternative for summary judgment, pursuant to Mass.R.Civ.P 56(c). Because both parties have submitted extra-pleading materials, this motion is one for summary judgment and is decided in accordance with Mass.R.Civ.P. 56. Stop & Shop Companies, Inc. v. Fisher, 387 Mass. 889, 892 (1983). Summary judgment shall be granted where there are no genuine issues as to any material *232 fact in dispute and where the moving parly is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nai’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The court considers the evidence with an indulgence in the opposing party’s favor. Connecticut Nat’lBank of Hartford v.Kommit, 31 Mass.App.Ct. 348, 353 (1991); Parent u. Stone & Webster Eng’g Corp., 408 Mass. 108, 113 (1991). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that [it] is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “A complete failure of proof concerning an essential element of the non-moving parly’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
I. Gladstone’s claims Against CNI A. Count I — Breach of Contract
“As a general rule, where an employment contract, be it express or implied, contains no definite period of employment, it establishes employment at will.” Jackson v. Action for Boston Community Development, Inc., 403 Mass. 8, 9 (1988), and cases cited. Notwithstanding certain limited exceptions, (i.e. liability for discharge in violation of public policy, obligation of good faith and fair dealing, prohibition of discrimination), an employee at will may be terminated by “the employer without notice, for almost any reason or for no reason at all.” Id. In Jackson, supra the court used several factors in determining that no reasonable juror could find that the employer’s personnel manual formed the basis of an express or implied contract altering the employee’s at will employment status.[2] Applying the circumstances of the instant case to the factors delineated in Jackson, supra, this court finds Gladstone remained an employee at will the entire time he was employed by CNI.
According to affidavits submitted by CNI, CNI’s personnel policies and guidelines are unilaterally promulgated by CNI. Gladstone was not asked, nor permitted, to negotiate the guidelines. These policies were not called to Gladstone’s attention at the onset of his employment term, but rather, were discussed during Gladstone’s training as a Telemarketing Supervisor and then, only in relation to how Gladstone, as a supervisor, was to handle his staff. CNI had on numerous occasions during Gladstone’s employ modified its personnel policy. Gladstone does not allege that these policies or guidelines state a term of employment. CNI’s “Positive Discipline Policy” provides supervisors with guidance, to be used at the individual supervisor’s discretion, when dealing with employee behavior or performance problems. CNI customarily instructs supervisors that the policies are merely guidelines and that employees may be terminated at will. Moreover, Gladstone twice signed an employment contract with CNI. Directly above his signature, the contract stated:
I understand that this employment application and any other company documents are not contracts of employment, and that any individual who is hired may voluntarily leave employment upon proper notice, and may be terminated by the company at any time and for any reason. I understand that any oral or written statements to the contrary are hereby expressly disavowed and should not be relied upon by me.
Based on these facts, the practices and policies of CNI did not give rise to an employment contract altering Gladstone’s employee at will status.
B. Count II — Civil Rights Violation
Count II of the complaint alleges that CNI interfered with Gladstone’s associational rights under the federal Constitution and the Massachusetts Declaration of Rights. It is Gladstone’s contention that he has a Constitutional right to have a romantic relationship with Reynolds and that CNI’s attempt to coerce Gladstone to accept a transfer to a lower paying position in an effort to force him to cease a personal relationship with Reynolds and subsequent termination of him when he refused, constitutes a violation of that right.
G.L.c. 12, §11H is violated “[w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the commonwealth ...” A threat is “the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.” Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474 cert, denied 115 S.Ct. 188 (1994). “Intimidation involves putting in fear for the purpose of compelling or deterring conduct.” Id. Wülits v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 210 (1991) (nonprofit school’s failure to renew a teacher’s contract because of her efforts to form an association of teachers does not constitute “threats, intimidation, or coercion” interfering with her exercise of free speech or association rights under G.L.c. 12, §11H). Coercion is “the active domination of anothers will.” Delaney v. Chief of Police ofWareham, 27 Mass.App.Ct. 398, 409 (1989).
Gladstone was an employee at will. CNI terminated him because of his personal involvement with his immediate supervisor. Such action by CNI is not within the scope of what constitute threats, coercion, or intimidation. CNI did not unlawfully interfere with Gladstone’s constitutionally secured rights. See Korb v. Raytheon Corp., 410 Mass. 581, 585 (1991) (no improper interference with secured rights, therefore no violation of G.L.c. 12, §11H, where employer fires an at-will employee who makes public statements in conflict with the corporation’s interests).
*233 II. Gladstone’s Claims Against The Globe
The only evidence of the Globe’s involvement in Gladstone’s employment with CNI is found in Gladstone’s complaint which summarily alleges that the “Globe had notice of, participated in, and condoned” CNI’s breach of contract and CNI’s coercion against Gladstone. In its motion, the Globe argues that Gladstone’s claims against it cannot stand because the Globe did not employ Gladstone or participate in Gladstone’s employment with CNI in any way. The Globe has submitted an affidavit by Godgrey Kauffmann, the Vice President of Circulation for the Globe, which states that the Globe was not the employer of Gladstone and played no part in the personnel decision that is the subject of the Gladstone’s complaint. Thus, the Globe has established that Gladstone has no reasonable expectation of proving his claims against the Globe. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Gladstone provides this court with no evidence from which to infer that the Globe has any relation to CNI’s alleged breach of Gladstone’s employment contract or violation of G.L.c. 12, §§11H, 1II. By simply resting on his pleadings and mere assertions of disputed facts, Gladstone has failed to defeat the Globe’s motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
ORDER
For the foregoing reasons, the motion for summary judgment of the defendants, Community Newsdealers, Inc., and The Globe Newspaper Company is hereby ALLOWED. Judgment shall enter dismissing the action.

The court’s determination was based on the fact that (1) the employer retained the right unilaterally to modify the manual at any time; (2) there was a slot commitment concerning the employer’s course of conduct, as the manual’s stated purpose was merely to provide “guidance” concerning the employer’s “policies”; (3) there was no evidence that employer and employee had negotiated concerning the language contained in the manual; (4) there was no evidence that the employer had called “special attention” to the manual; (5) there was no evidence that, when hired or, indeed, thereafter, the employee had manifested his assent to the manual’s terms; and (6) the manual neither stipulated nor identified a term of employment. Id. at 416-18; Pearson v. John Hancock Mutual Life Insurance Company, 979 F.2d 254, 255 (1st Cir. 1992).