**William A. RAFFAELE, Plaintiff,**

v.

**RYDER DEDICATED LOGISTICS, INC., Defendant.**

Civil Action No. 96–40011–NMG.

United States District Court,
D. Massachusetts.

July 15, 1996.

Gregory J. Angelini, Bodanza & Bodanza, Leominster, MA, Richard D. Murphy, Jr., Leominster, MA, for William Raffaele.

John J. Rosenberg, Epstein, Becker & Green, P.C., Boston, MA, for Ryder Dedicated Logistics, Inc.

## MEMORANDUM AND ORDER

GORTON, District Judge.

On November 16, 1995, plaintiff, William A. Raffaele ("Raffaele") filed this action in the Worcester County Superior Court Department of the Trial Court of Massachusetts. Defendant, Ryder Dedicated Logistics, Inc. ("Ryder") removed the action to this Court, and on May 7, 1996, pursuant to Fed.R.Civ.P. 12(b)(6), filed a motion to dismiss for failure to state a claim upon which relief can be granted. For the following reasons, defendant's motion will be allowed.

## I. FACTUAL BACKGROUND

When considering a motion to dismiss, this Court accepts as true the allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *Carreiro v. Rhodes Gill and Co., Ltd.*, 68 F.3d 1443, 1446 (1st Cir.1995). Plaintiff's

complaint asserts the following relevant factual allegations:

1. Raffaele is a resident of Leominster and was employed by Ryder as a tractor-trailer driver. The terms and conditions of his employment relationship were defined and governed by the Ryder Dedicated Logistics Policy and Procedures Manual ("the Manual").

2. On August 5, 1994, the plaintiff was driving a Ryder tractor-trailer in Vermont on Interstate 91 ("I–91"). At the time, traffic on I–91 was largely comprised of tractor-trailers similar to the one that the plaintiff was driving.

3. The plaintiff was driving at a reasonable speed and, after safely completing a lane change, he noticed a flash of light in his side mirror. After confirming that this flash of light came from an automobile that was parked on the median strip and which apparently was in trouble, the plaintiff a) pulled into the breakdown lane, b) properly secured his tractor trailer, c) approached the disabled vehicle, and d) waited with the vehicle's occupants until the police arrived.

4. Upon the arrival of a Vermont State Trooper, the plaintiff told the officer what happened. The automobile occupants stated that they "believed" that their car had been struck by the rear wheels of a tractor-trailer, but they could not identify the subject tractor-trailer. The Vermont State Trooper inspected the plaintiff's vehicle and license and released him without issuing a citation or warning.

5. The plaintiff immediately telephoned his supervisor and left a detailed message on his answering machine describing the incident. The supervisor telephoned the plaintiff the next day and assured him that there was "nothing to worry about." The following Monday, however, the supervisor telephoned the plaintiff at home and told him that he

was suspended from his job. As grounds for the suspension, the supervisor stated that he had spoken by telephone with the Vermont State Trooper, who told him that he was going to issue a citation against plaintiff for "changing lanes in an unsafe manner."

6. The plaintiff did not receive the citation until the end of August, 1994. On October 17, 1994, Ryder terminated the plaintiff's employment. On December 1, 1994, the plaintiff appealed the citation in Vermont Traffic Court, where he was found to be not at fault. Defendant failed or refused to afford the plaintiff the four step "Resolution Procedure" outlined in the company manual, which provides for an investigation and discussion of reported problems.[1]

## II. THE COMPLAINT

Plaintiff's complaint sets forth three claims: a state law breach of contract (Count I), a breach of implied covenant of good faith and fair dealing (Count II), and a violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I ("MCRA") (Count III). Defendant's motion to dismiss advances three arguments:

1) plaintiff was an at-will employee, and as such was subject to termination at any time for any reason or for no reason at all, and defendant's employee manual does not give rise to a contract,

2) plaintiff's termination does not implicate the implied covenant of good faith and fair dealing, and

3) the Massachusetts Civil Rights Act is not applicable to plaintiff's claim of wrongful termination.

Defendant's arguments are considered *seriatim.*

---

1. The Resolution Procedure (Manual section 3.01) specifies the following procedure:
    1) discuss the problem with the immediate supervisor. If the problem is not satisfactorily solved, go to step 2.
    2) Ask to speak to the supervisor's immediate supervisor and file a Complaint Resolution Report (form included). If the problem is not satisfactorily solved, go to step 3. .

3) Ask for the case to be reviewed by the Region Operations Manager or the Area Employee Relations Manager. If the problem is not satisfactorily solved, go to step 4.
4) The supervisor will arrange for the case to be heard by the applicable Region or location Review council. The decision of the applicable council is final.

## III. DEFENDANT'S ARGUMENTS

### A. *Absence of a Contract*

■ As an at-will employee, the plaintiff was subject to termination at any time for any reason, or for no reason at all. *See Frankina v. First Nat'l Bank of Boston*, 801 F.Supp. 875, 883 (D.Mass.1992), *aff'd*, 991 F.2d 786, 1993 WL 113727 (1st Cir.1993); *Bergeson v. Franchi*, 783 F.Supp. 713, 717 (D.Mass.1992). The plaintiff acknowledges that he was an at-will employee, but asserts that the employee manual constitutes an enforceable contract.

■ Whether a document is a contract is a question of law, *see Mass Cash Register, Inc. v. Comtrex Systems Corp.*, 901 F.Supp. 404, 415 (D.Mass.1995) (citing cases), and employee handbooks and written policies rarely constitute an enforceable contract. *Forti v. Massachusetts Institute of Technology*, 1995 WL 809498, at *5, 1995 WL 809498 (Mass.Super.Ct., May 23, 1995). There are six factors that must be considered in determining whether an employee manual rises to the level of a contract, i.e., whether or not:

1) the employer retained the right unilaterally to modify the manual at any time,

2) there is a firm commitment concerning the employer's course of conduct, as the manual's stated purpose is merely to provide guidance as to the employer's policies,

3) there is evidence that the employer and the employee negotiated concerning the language of the manual,

4) there is evidence that the employer had called "special attention" to the manual,

5) there is evidence that, when hired (or thereafter), the employee manifested his assent to the manual's terms, and

6) the manual stipulates identifies a term of employment.

*Pearson v. John Hancock Mutual Life Insurance Co.*, 979 F.2d 254, 256 (1st Cir.1992).

■ An application of the six-factor test to the manual at issue in the case at bar compels the conclusion that the Ryder manual is not an enforceable contract. First, the handbook explicitly states that "Ryder reserves to itself the right at any time to amend, revoke, replace or suspend any or all of the policies and procedures contained herein." The plaintiff signed the handbook on that page, evidencing his understanding of and acquiescence to that provision. It is, therefore, unilaterally modifiable.

Second, the handbook's hortatory nature is clearly demonstrated on the same page by the statement that the manual "is not intended to be an employment contract nor a guarantee of employment or agreement, nor does it contain promises or commitments to the employee of any kind." The foregoing statement impels the conclusion that the Manual "is not couched in language traditionally associated with firm commitments." *Pearson*, 979 F.2d at 257.

■ The remaining *Pearson* elements similarly favor the defendant because the manual is a standard form that is distributed to all employees without any negotiation of its terms. Moreover, there is no evidence that the handbook was "specially emphasized" by the employer. Nor was the manual "seasonally accepted" by the plaintiff, because he signed a statement which explicitly provided that the manual was not a contract or a guaranty of employment. Finally, the manual does not contain any set period of employment, nor does it otherwise impose any definitive limit on the fluid nature of at-will employment. A claim that a manual constitutes a contract must fail if any *single* factor is not satisfied. *See Pearson*, 979 F.2d at 256–57. In this case, plaintiff fails to allege facts sufficient to satisfy any of the factors. Accordingly, Count I of the complaint will be dismissed.

### B. *The Covenant of Good Faith and Fair Dealing*

■ The termination of an at-will employee constitutes a breach of the covenant of good faith and fair dealing only when such termination is "motivated . . . by an intent to deprive [the employee] of earned compensation," or is otherwise violative of public policy. *Maiuri v. TJX Companies, Inc.*, 1993 WL 818698, at *3 (Mass.Super.Ct., Dec. 14, 1993). In the case at bar, the plaintiff does not allege that he was deprived of benefits

owed to him, nor is there any evidence to suggest that plaintiff's termination was in any way violative of public policy.

Courts have found the termination of at-will employees to violate public policy when the actual reason for termination is invidiously discriminatory, *see Pearson,* 979 F.2d at 258, or when the termination is in response to conduct of an employee:

1) to assert a legal right, *see Smith–Pfeffer v. Superintendent of the Walter E. Fernald State School,* 404 Mass. 145, 149 [533 N.E.2d 1368] (1989) (filing of a workers' compensation claim),

2) to do what the law requires, *see Hobson v. McLean Hosp. Corp.,* 402 Mass. 413, 416 [522 N.E.2d 975] (1988) (enforcing safety laws), or

3) to refuse to do what the law forbids, *see DeRose v. Putnam Management Co.,* 398 Mass. 205, 210 [496 N.E.2d 428] (1986) (giving false testimony at trial).

■ Plaintiff's claim that he was terminated for asserting a legal right is negated by the fact that the plaintiff was terminated upon receiving the citation, before he contested the traffic violation. Furthermore, although Raffaele properly notes that courts have provided "legal redress in certain circumstances for employees terminated for performing important public deeds," *Flesner v. Technical Communications Corp.,* 410 Mass. 805, 810, 575 N.E.2d 1107 (1991), the plaintiff's deed of stopping to assist a troubled motorist, while laudable, did not amount to an "important public deed" such as to invoke the exception to the general terminability of at-will employees. *Compare Flesner,* 410 Mass. at 810, 811 n. 3, 575 N.E.2d 1107 ("important public deeds" include cooperation with an ongoing government investigation and "whistleblowing"). In sum, the termination of the plaintiff did not violate public policy and, accordingly, Count II will be dismissed.

C. *Applicability of the Massachusetts Civil Rights Act*

■ In order to prove a violation of the MCRA, a plaintiff must prove that:

(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'

*Biggins v. Hazen Paper Co.,* 953 F.2d 1405, 1424 (1992), *rev'd in part on other grounds,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).

Continuation of the plaintiff's at-will employment is not a legal right. *See Flesner,* 410 Mass. at 819, 575 N.E.2d 1107. Furthermore, plaintiff's suspension before the issuance of a citation and his subsequent termination did not constitute coercion, intimidation or threats. In short, because the complaint fails to allege facts sufficient to satisfy the requisite elements for a violation of the MCRA, defendant's motion to dismiss Count III will be allowed.

### ORDER

For the foregoing reasons, defendant's motion to dismiss is **ALLOWED** and plaintiff's complaint is, therefore, **DISMISSED.**

So ordered.