EDWARD F. GREGORY *vs.* RAYTHEON SERVICE COMPANY. No. 88-P-865. July 7, 1989. *Contract*, Employment. *Evidence*, Extrinsic affecting writing. *Employment*, Termination, Discrimination.

Upon motion of the defendant, a judge of the Superior Court granted summary judgment dismissing this action consisting of three related claims. We affirm.

1. The plaintiff Gregory's basic claim was that he had a contract for lifetime employment[1] with the defendant Raytheon Service Company, working as New England regional manager of a recently formed division of the defendant called Raytheon Computer Services, and that he was discharged on an unjustified ground of inadequate performance. In granting judgment, the judge found beyond material dispute that the contract between the parties was terminable by either at will, and that it was duly terminated by the defendant.

The salient facts emerge from the materials submitted in support of, and in opposition to, the motion. After preliminary talks between the plaintiff and Larry Martin, general manager of the division, a representative of the industrial relations department of the company, acting for the company, wrote to the plaintiff on November 2, 1981, offering him the post of New England manager of the division at a salary of $3,750 per month, with "an annualized incentive of $25,000 based upon obtainment of quotas according to the 1982 Incentive Plan for Raytheon Computer Services." The plaintiff accepted. He commenced work in December, 1981. On May 21, 1982, he executed, with approvals on behalf of the company and division, the 1982 Incentive Plan referred to, which carried back to January 1, 1982. This set out in detail the terms of employment, including duties, assigned territory, quotas for sales and profits, salary, incentive compensations, etc. The document stated on its facing page: "Acceptance of the Plan will constitute an agreement to be bound by all of the terms and conditions contained in the Plan. You are also aware that your employment is terminable at will by either party and the fact that the incentive plan will remain in effect through a specified future date does not constitute a guarantee that your employment will be continuous through that same date." Again, in the body of the

---

[1] Sometimes also referred to by the plaintiff as "permanent employment" or employment of "indefinite duration."

document: "Nothing herein shall constitute an agreement to employ an individual for any specific period of time and [the company] may, with or without cause, terminate employment at any time."[2]

The Plan (and the letter of November 2 which pointed to it) had all the appearance of an "integration" of the contractual relationship. The plaintiff, however, contended that there was an oral agreement, preceding the letter of November 2, which provided for lifetime employment. This, supposedly, was to be taken as a kind of supplement to the November 2 letter and the Plan referred to.

Whether documents represent a full integration is a question of intent on which anterior negotiations (oral or written) can shed light. See *Antonellis* v. *Northgate Constr. Corp.*, 362 Mass. 847, 850-851 (1973). See also *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-754 (1973); Restatement (Second) of Contracts §§ 209 & 214 (1979). Here there is nothing of record to put the fullness of the integration in question.

·(i) In his own deposition, the plaintiff nowhere stated that there was a promise of lifetime employment. There was, quite naturally, conversation that the freshly launched division had a promising future, that the plaintiff might make substantial sums under the Plan, that his experience with the division might be a nice way to end his business career (he was then fifty-four years of age), and that the company had a good pension system. Such commonplace remarks could be inflated into a lifetime contract only by a strenuous exercise in the self-hypnotizing rhetoric of advocacy.

(ii) Lifetime contracts are extraordinary in their nature and strong proof is required to establish their due formation. See *Rydman* v. *Dennison Mfg. Co.*, 373 Mass. 855 (1977). Cf. *Boleman* v. *Congdon and Carpenter Co.*, 638 F.2d 2, 4 (1st Cir.), cert. denied, 454 U.S. 824 (1981). Especially should a cautious approach be taken to a claim of lifetime employment where an agreement to that effect is alleged to have been made on behalf of a business which was just starting up. (The plaintiff was dismissed on August 31, 1982. The business closed its doors, in effect, at the end of 1983, and certain of its assets were sold in early 1984.)

(iii) To accept that a lifetime agreement survived the documents would be not to supplement the documents representing the integration, but to contradict them, since these unmistakably described an agreement terminable at will. If any issue of fact were otherwise raised upon which trial was required, this factor of contradiction would put the quietus to it. See *Robert Indus., Inc.* v. *Spence*, 362 Mass. at 754 ("Expressions in our cases to the effect that evidence of circumstances can be admitted only after an ambiguity has been found on the face of the written instrument have reference to

---

[2] Four sales people in the New England region served under incentive plans. The cover pages stated that their employments were terminable at will. The plaintiff, as regional manager, had signed these cover pages.

evidence offered to contradict the written terms."); *Fred S. James & Co.* v. *Hoffmann*, 24 Mass. App. Ct. 160, 164 (1987); Restatement, *supra*, § 215.

The judge in his memorandum on the motion was right to characterize the relationship beyond doubt as one at will. He did not enter upon the circumstances of the plaintiff's dismissal.[3]

2. Prescinding from the claim that he had a fully binding lifetime contract, the plaintiff says he was entitled to relief even if he had no more than an agreement terminable at will: here he sought to bring himself within the *Fortune* doctrine (*Fortune* v. *National Cash Register Co.*, 373 Mass. 96 [1977]) as that has been elaborated. An employer may not terminate an at-will employment in an effort to deprive the employee of "compensation for past services" (*Gram* v. *Liberty Mut. Ins. Co.*, 391 Mass. 333, 335 [1984] [*Gram II*]), or an "identifiable, future benefit . . . reflective of past services" (*id.* at 334, quoting from *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 673 [1981] [*Gram I*]). On the other hand, there is no recovery of "career credits" because these relate to "future compensation for future services" (*Gram II* at 334). See also *McCone* v. *New England Tel. & Tel. Co.*, 393 Mass. 231, 234-235 (1984).

On the record the plaintiff herein could not begin to show that he was shorn of any benefit due him under the Plan — nor that the defendant by the termination tried to achieve any "readily definable, financial windfall" (*Gram II* at 335). The plaintiff might rue the fact that by the dismissal he lost an opportunity to earn additional remuneration for subsequent performance, but that was no more than the consequence of a lawful dismissal, and leaves him without a claim.

3. The plaintiff was 55 years old when he was dismissed in August, 1982. In December, 1982, one John Wolf, then 39 years old, was hired as regional manager. Upon these facts, and very little else, the plaintiff asserted a claim of prohibited age discrimination against the company under the State and Federal statutes (G.L. c. 151B; 29 U.S.C. §§ 621 et seq. [1982]).[4]

It will be enough to say that even if the plaintiff conceivably could make some progress toward proving a prima facie case of age discrimination, he could make no progress in showing that the "plausible, nondiscriminatory reason" articulated by the defendant for the discharge, namely, poor performance, was a pretext, concealing an intent to discriminate. See *Dea* v. *Look*, 810 F.2d 12, 14 (1st Cir. 1987); *Trustees of Forbes Library* v. *Labor Relations Commn.*, 384 Mass. 559, 566-567 (1981). For the plaintiff merely to cast doubt on the correctness of the defendant's proffered reason for the

---

[3] We add that while the plaintiff now contends that he contracted for lifetime employment with Larry Martin, he indicated in his deposition that he knew that only the industrial relations department of the company, by company practice, could make offers of employment. Martin was not in that department.

[4] The plaintiff had also claimed sex discrimination but this was not pursued.

discharge would not avert summary judgment for the defendant. *Dea, supra* at 15.

After allowing the usual intendments in favor of the plaintiff on this motion for summary judgment, there is still "no genuine issue as to any material fact," and the defendant "is entitled to a judgment as a matter of law." Mass.R.Civ.P 56(c), 365 Mass. 824 (1974).

*Judgment affirmed.*

*Jack R. Pirozzolo (Richard L. Binder* with him) for the plaintiff.
*James S. Dittmar (Richard R. Lavin* with him) for the defendant.