April 14, 1993
[NOT FOR PUBLICATION]
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2156

DAVID FRANKINA,

Plaintiff, Appellant,

v.

FIRST NATIONAL BANK OF BOSTON,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Andrew A. Caffrey, Senior U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Cyr, Circuit Judge.

Denise M. Leydon with whom Weston, Patrick, Willard & Redding was

on brief for appellant.
Richard P. Ward with whom Robert B. Gordon and Ropes & Gray were

on brief for appellee.

Per Curiam. The First National Bank of Boston ("Bank")
Per Curiam.

terminated the employment of appellant David Frankina pursuant to

a reduction in force. Frankina sued the Bank, asserting claims

for age discrimination, in violation of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. 621-34, and the Massachu-

setts Fair Employment Practices Act, Mass. Gen. L. ch. 151B;

breach of an alleged lifetime-employment contract; and breach of

an alleged preferential-rehiring agreement. The district court

granted summary judgment. We affirm.

I

BACKGROUND

We relate the facts in the light most favorable to

appellant. See Newport Plaza Assoc. v. Durfee Attleboro Bank,

F.2d , (1st Cir. 1993), No. 92-1444, slip op. at 6

(1st Cir. Feb. 16, 1993). In 1962, Herb Ericson, a Bank person-

nel officer, hired David Frankina as a Security-Cage Clerk.

Ericson represented that Frankina would have a job for life

unless he committed a criminal act against the Bank. Ericson

also told Frankina that the Bank had never laid off an employee

in its 200-year history. Throughout his twenty-seven year tenure

with the Bank, Frankina became aware of no employee who was

terminated except for criminal conduct.

In 1989, the Bank launched a large-scale reduction in

its work force due to mounting losses in its Treasury and Banking

Services operation. The Bank completely reorganized the Banking

Services component of the department, reconfiguring approximately

252 operational functions into approximately 135 functions. As a

result, 119 positions were eliminated. Thomas Keane, Senior

Operations Manager of the Capital Asset Services Department,

determined that it was necessary to eliminate two of the seven

positions in the Control Unit to eliminate functional redundancy.

After reviewing recent employee performance evalua-

tions, and based on his personal knowledge of employee work

habits, Keane selected two Control Unit employees for dismissal:

a thirty-five year old, and Frankina, then forty-seven. Keane

concluded that the thirty-five year old lacked the necessary

skills and had the least experience, and that Frankina was the

least qualified employee in the Unit. Keane found that Frankina

had relatively poor work habits, experienced difficulty in

completing assigned tasks, and was least well-suited to perform

the work duties in the reconfigured organization. Four of the

five Control Unit employees who were retained were younger than

Frankina.1

On May 19, 1989, Keane and Gerard Demone, Senior Human

Resources Manager, met with Frankina to inform him of the layoff,

describe the severance benefits, and offer professional job-

search assistance. Demone told Frankina that job applications

from laid-off employees would be given preferential treatment in

1One retained employee was forty-nine years old at the time
of the reorganization, two were forty-one, one was thirty-seven,
and one was thirty-one. Frankina suggests that the forty-nine
year old was not similarly situated because he served in a
managerial capacity.

4

the Bank's hiring process. Frankina subsequently applied for

more than fifty positions with the Bank.

II

DISCUSSION

A virtual "carbon copy" suit was brought by another

former Bank employee in Goldman v. First Nat'l Bank of Boston,

F.2d (1st Cir. 1993), No. 92-1773 (1st Cir. Feb. 12,

1993). Thus, we rely extensively on our Goldman analysis. In

Goldman, we defined the applicable summary judgment standard as

follows:

We review a grant of summary judgment de

novo, employing the same criteria incumbent

upon the district court in the first in-
stance. Pedraza v. Shell Oil Co., 942 F.2d

48, 50 (1st Cir. 1991), cert. denied,

U.S. , 112 S. Ct. 993 (1992). Summary
judgment is appropriate where the record,
including the pleadings, depositions, answers
to interrogatories, admissions on file, and
affidavits, viewed in the light most favor-
able to the nonmoving party, reveals no genu-
ine issue as to any material fact, and the
moving party is entitled to judgment as a
matter of law. See Fed. R. Civ. P. 56(c);

Canal Ins. Co. v. Benner, 980 F.2d 23, 25

(1st Cir. 1992); see also Mesnick v. General

Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991),

cert. denied, U.S. , 112 S. Ct. 2965

(1992). The nonmoving party "may not rest
upon the mere allegations or denials of the
. . . pleadings, but . . . must set forth
specific facts showing that there is a genu-
ine issue for trial." Fed. R. Civ. P. 56(e).
See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986). There is no trialworthy
issue unless there is enough competent evi-
dence to enable a finding favorable to the
nonmoving party. Id. at 249 (citing First

Nat'l Bank of Arizona v. Cities Service Co.,

5

391 U.S. 253, 288-89 (1968)). Moreover,
"[e]ven in cases where elusive concepts such
as motive or intent are at issue, summary
judgment may be appropriate if the nonmoving
party rests merely upon conclusory allega-
tions, improbable inferences, and unsupported
speculation." Medina-Munoz v. R.J. Reynolds

Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Goldman, slip op. at 4-5.

A. Age Discrimination Claims

Frankina maintains that he adduced enough evidence to

generate a trialworthy issue as to whether the termination of his

employment was motivated by age discrimination, and argues that

the district court impermissibly weighed the competing evidence

rather than viewing it in the light most favorable to him.

1. The Burden-Shifting Paradigm

The plaintiff bears the ultimate burden of proving that

his age was the determinative factor in his discharge. Mesnick

v. General Electric Co., 950 F.2d 816, 823 (1st Cir. 1991), cert.

denied, U.S. , 112 S. Ct. 2965 (1992). "Absent direct

evidence of age discrimination, the familiar burden-shifting

framework established in [McDonnell Douglas] comes into play."

Goldman, slip op. at 6. See McDonnell Douglas Corp. v. Green,

411 U.S. 792, 802-05 (1973). As we explained in Goldman:

First, the plaintiff must make a prima facie
showing of discrimination; that is, [Frank-
ina] must demonstrate that he (1) was at
least forty years of age, (2) met the employ-
er's legitimate job performance expectations,
(3) experienced adverse employment action,
and (4) was replaced by a person with roughly
equivalent job qualifications. A plaintiff
whose employment was terminated in the course

6

of a reduction in force need not demonstrate
that he was replaced, but may show that the

employer did not treat age neutrally or that
younger persons were retained in the same
position.

Establishment of the prima facie case
creates a presumption that the employer un-
lawfully discriminated against the employee,
and the burden of production shifts to the
defendant-employer to articulate some legiti-
mate, nondiscriminatory reason for the ter-
mination. The burden of persuasion remains
with the plaintiff-employee at all times.

The presumption of unlawful age discrim-
ination generated by the plaintiff-employee's
prima facie showing dissipates, however,
provided the employer sustains its burden of
production; the plaintiff-employee must then
demonstrate that the proffered reason for the
adverse employment action was simply a pre-
text for age discrimination. The plaintiff
must do more than cast doubt on the employ-
er's justification for the challenged action;
there must be a sufficient showing that dis-
criminatory animus motivated the action.
Direct or indirect evidence of discriminatory
motive may do, but the evidence as a whole
must be sufficient for a reasonable fact-
finder to infer that the employer's decision
was motivated by age animus.

Under First Circuit caselaw, the plain-
tiff-employee must adduce minimally suffi-
cient evidence of pretext and discriminatory

animus. A showing that the employer's justi-
fication was not the actual motive may be
enough if the facts and circumstances raise a
reasonable inference of age discrimination.
Nevertheless, the plaintiff-employee cannot
avert summary judgment if the record is de-
void of [both] direct and circumstantial

evidence of discriminatory animus on the part
of the employer.

Goldman, slip op. at 6-8 (internal citations and quotation marks

omitted).

7

It is not disputed that Frankina made out a prima facie

age discrimination claim, nor that the Bank articulated a nondis-

criminatory motive for Frankina's dismissal, i.e., that economic

considerations necessitated a reduction in force and Frankina was

the "least qualified employee" in his unit. The dispute on

appeal centers on the third stage of the McDonnell Douglas

analysis. The district court acknowledged that Frankina present-

ed some evidence to counter the Bank's characterization of him as

a poor performer, but ruled that Frankina presented insufficient

evidence of pretext and discriminatory animus. Accordingly, the

Bank was awarded summary judgment on Frankina's state and federal

age-discrimination claims.2

2The complaint alleged parallel claims under the ADEA and
its Massachusetts counterpart, Mass. Gen. L. ch. 151B. On
appeal, Frankina asserts for the first time that Massachusetts
applies a less onerous standard of proof to claims brought under
the Massachusetts statute than this court applies to ADEA claims,
see infra note 4, and that his state claim therefore must be

addressed separately. However, Frankina did not distinguish
these claims in his opposition to summary judgment, and the
district court analyzed them collectively, noting only that
"courts apply the same analysis to state and federal discrimina-
tion claims." We decline to address this newfound claim, as
"theories not raised squarely in the district court cannot be
surfaced for the first time on appeal." McCoy v. Massachusetts

Inst. of Technology, 950 F.2d 13, 22 (1st Cir. 1991), cert.

denied, U.S. , 112 S. Ct. 1939 (1992); see also Poliquin

v. Garden Way, Inc., F.2d (1st Cir. 1993), Nos. 92-1115,

92-1116, slip op. at 8 (1st Cir. Mar. 24, 1993) (explaining that
in the "winnowing process" of litigation, the raise-or-waive rule
enables courts to "narrow what remains to be decided[;] [i]f
lawyers could pursue on appeal issues not properly raised below,
there would be little incentive to get it right the first time
and no end of retrials"). Although the raise-or-waive rule may
be relaxed in an exceptional case when a miscarriage of justice
would otherwise result, see Johnston v. Holiday Inns, Inc., 595

F.2d 890, 894 (1st Cir. 1979) (quoting Dobb v. Baker, 505 F.2d

1041, 1044 (1st Cir. 1974)), our holding that Frankina failed to
adduce sufficient evidence of pretext, see infra Part II.A.2,

8

would make summary judgment proper even under the less onerous
standard of proof urged by Frankina.

9

2. Evidence of Pretext

"In assessing pretext, [our] 'focus must be on the

perception of the decisionmaker,' that is, whether the employer

believed its stated reason to be credible." Mesnick, 950 F.2d at

824 (quoting Gray v. New England Tel. & Tel. Co., 792 F.2d 251,

256 (1st Cir. 1986)) (emphasis added). Frankina does not dispute

that economic considerations necessitated a reduction in force,

but argues that he produced sufficient evidence to rebut the

Bank's contention that he was the least qualified employee in his

unit.

Frankina produced ample evidence that the Bank did not

consider his work performance unsatisfactory in absolute terms:

he was given merit salary increases on a regular basis throughout

his tenure; none of his performance evaluations indicated that

his job performance was unacceptable; his overall performance

rating in 1986 was "outstanding," the highest rating available;

and he received no warnings relating to his work performance.

The Bank's justification for Frankina's discharge, however, was

not that his performance was unsatisfactory in an absolute sense,

but that he was the least qualified employee in the Control Unit.

Thus, refutation of the Bank's proffered justification required

evidence permitting a trier of fact reasonably to conclude that

Frankina's abilities and qualifications were equal or superior to

employees who were retained. Goldman, slip op. at 10. As

10

Frankina made no such evidentiary showing in the district court,

he failed to demonstrate a trialworthy issue.3

3. Evidence of Age Animus

"Evidence of age animus need not be of the 'smoking gun

variety,' but the totality of the circumstances must permit a

reasonable inference that the employer's justification for the

challenged action was a pretext for age discrimination." Gold-

man, slip op. at 11 (quoting Connell v. Bank of Boston, 924 F.2d

1169, 1175 (1st Cir.), cert. denied, U.S. , 111 S. Ct.

2828 (1991)). Frankina contends that an inference of dis-

criminatory animus on the part of the Bank arises from the

following evidence: Frankina and six other former Bank employees

dismissed pursuant to the reduction in force were the oldest

employees and had the longest service records in their respective

units; the termination of older, more costly employees would

optimize the cost reductions achieved through the reduction in

force; of the 119 terminated employees, 41% were over forty years

of age, but only 24% of those subsequently rehired were over

forty; under a new retirement plan introduced in 1989, which

required the Bank annually to contribute a percentage of each

employee's salary to a "Cash Balance" account, the Bank deposited

a decreasing percentage of salary to an employee's account as the

employee reached the upper service brackets; and the Bank dis-

3Although Frankina argues on appeal that his performance
evaluations in 1987 and 1988 were equivalent to those of a
younger colleague who was retained, he waived the argument by
failing to raise it below. See supra note 2.

11

banded the "Quarter Century Club," a Bank-sponsored social

organization for employees with twenty-five years or more of

service.

We considered the identical evidence in Goldman, and

concluded that:

at best the record reveals that a small num-
ber of those discharged were among the older
employees in their respective units, that the
Bank implemented a new pension plan which has
in no measure been shown to have been disad-
vantageous to older employees, and that the
Bank stopped funding the Quarter Century
Club. The gap between this evidence and an
inference of age discrimination could only be
bridged by impermissible inference.

Id. at 15-16. We reach the same conclusion here, based on the

grounds detailed in Goldman. See id. at 11-16. As the evidence

presented in the district court was insufficient to enable a

factfinder reasonably to conclude that the articulated reason for

Frankina's termination was pretextual or that his termination was

motivated by age animus, we affirm the grant of summary judgment

on the age discrimination claims.4

B. Breach of Lifetime Employment Contract

Next, Frankina argues that summary judgment was improp-

er on his claim for breach of a lifetime employment contract.

The district court found that Frankina failed to generate a

4Frankina argues that our cases place a more onerous burden
on an ADEA plaintiff than that envisioned by the Supreme Court in
McDonnell Douglas and Texas Dep't of Community Affairs v. Bur-

dine, 450 U.S. 248 (1981). As we rejected this argument in

Goldman, we do not discuss it here. See Goldman, slip op. at 8

n.4.

12

trialworthy issue as to whether the person who hired Frankina

possessed actual or apparent authority to bind the Bank to a

lifetime employment contract. We agree.

Frankina maintains that Bank personnel officer Herb

Ericson offered him lifetime employment by representing that the

Bank had never laid off employees and that Frankina would have a

job for life unless he committed a criminal act against the Bank.

Moreover, he argues, the concept of lifetime employment was

reinforced throughout his tenure at the Bank as he never knew of

an employee being dismissed except for criminal conduct. For

present purposes, we assume, without deciding, that Ericson's

representations were sufficient to impart an offer of lifetime

employment to Frankina.

As we stated in Goldman, however:

Under Massachusetts law, a lifetime employ-
ment contract cannot be found absent evidence
that it was made or ratified by an officer or
agent with actual or apparent authority to
bind the employer to a lifetime contract.
See Rydman v. Dennison Mfg. Co., 373 Mass.

855, 366 N.E.2d 763 (1977); Porshin v. Snid-

er, 349 Mass. 653, 654, 212 N.E.2d 216, 217

(1965); Thalin v. Friden Calculating Mach.

Co., 338 Mass. 67, 70, 153 N.E.2d 658, 660

(1958); Simonelli v. Boston Hous. Auth., 334

Mass. 438, 440-41, 137 N.E.2d 670, 672-73
(1956).

Id. at 16-17. As the present record contains no evidence that

the Bank invested Ericson with actual authority to extend a

binding offer of lifetime employment to anyone, we need only

determine whether Frankina has demonstrated a genuine factual

dispute material to the issue of apparent authority.

13

Apparent authority "results from conduct by the princi-

pal which causes a third person reasonably to believe that a

particular person . . . has authority to enter into negotiations

or to make representations as his agent." Hudson v. Massachu-

setts Property Ins. Underwriting Ass'n, 386 Mass. 450, 457, 436

N.E.2d 155, 159 (1982) (quoting W.A. Seavey, Agency 8D at p. 13

(1964)) (emphasis added); accord Goldman, slip op. at 17.

Apparent authority "'cannot be established by the putative

agent's own words or conduct, but only by the principal.'"

Sheinkopf v. Stone, 927 F.2d 1259, 1269 (1st Cir. 1991) (quoting

Sheldon v. First Fed. Savings & Loan Ass'n, 566 F.2d 805, 808

(1st Cir. 1977)) (emphasis added). Thus, as in Goldman, slip op.

at 17, we must examine the record for evidence of conduct on the

part of the Bank that could have led Frankina reasonably to

believe that Ericson was authorized to extend an offer of life-

time employment.

"A person appointed to a position with generally recog-

nized functions may be found to possess apparent authority to

perform the duties ordinarily entrusted to one occupying that

position." Id. (citing Restatement (Second) of Agency 27 cmt.

a (1958)). As a personnel officer, Ericson undoubtedly had

actual or apparent authority to hire Bank employees. Under

Massachusetts law, however, ordinary authority to hire is insuf-

ficient to bind an employer to a lifetime employment contract.

Id. at 18-19 (citing cases). Thus, holding Ericson out as its

agent for general hiring purposes did not constitute conduct

14

warranting an objectively reasonable belief that Ericson was

authorized to offer lifetime employment with the Bank. See id.

at 19.

Under rare circumstances, apparent authority to enter a

lifetime employment contract may be found where it is customary

for a particular officer or agent to make lifetime contracts.

Id. The Bank submitted competent affidavits attesting that

Ericson had no actual authority to bind the Bank to a lifetime

contract and that no employee has a lifetime contract with the

Bank. Nonetheless, Frankina contends that an inference that

lifetime contracts were commonplace at the Bank arises from the

"widely discussed fact" that, prior to 1989, no employee had ever

been terminated other than for criminal conduct. Under Massa-

chusetts law, however, "[l]ifetime contracts are [considered]

extraordinary in their nature and strong proof is required to

establish their due formation." Gregory v. Raytheon Serv. Co.,

27 Mass. App. Ct. 1170, 1171, 540 N.E.2d 694, 695 (1989); see

Goldman, slip op. at 20. "Although widespread knowledge that the

Bank had never laid off an employee except for criminal conduct

might prompt the legitimate belief that employment at the Bank

was relatively secure, it cannot be considered competent proof,

let alone 'strong proof,' that any Bank employee had a lifetime

employment contract." Id. (internal citation omitted). Absent

evidence that any employee at any level under any circum-

stances had a lifetime contract with the Bank, we must con-

15

clude that a rational factfinder could not reasonably find that

lifetime employment contracts with the Bank were customary. Id.

Although Frankina correctly asserts that an agent's

authority to make binding promises is a question of fact, see

Eastern Renovating Corp. v. Forhan, 391 F. Supp. 204, 205 (D.

Mass. 1975); Salem Bldg. Supply Co. v. J.B.L. Constr. Co., 10

Mass. App. Ct. 360, 365, 407 N.E.2d 1302, 1306 (1980), he pre-

sented no evidence which would permit a factfinder reasonably to

conclude, consistent with Massachusetts law, that Ericson had

actual or apparent authority to bind the Bank to a lifetime

employment contract. Nor did Frankina adduce evidence that

anyone else, with actual or apparent authority to bind the Bank,

subsequently ratified any unauthorized offer of lifetime employ-

ment. See Goldman, slip op. at 20-21. As no trialworthy issue

was raised, summary judgment was proper on the lifetime employ-

ment claim.5

C. Breach of Preferential Hiring Contract

Finally, Frankina contends that there is a disputed

issue of material fact as to whether the Bank breached a promise

to accord preferential treatment to any reemployment application

he might file. Although the Bank denies any such promise, we

assume for present purposes, as did the district court, that such

a promise was made. The district court ruled that any such

5Accordingly, we need not address the claim that Frankina
changed his position in reliance on a reasonable belief that
Ericson had authority to offer lifetime employment.

16

promise would have lacked the consideration required to support a

contract under Massachusetts law. Frankina contends that he

relied to his detriment on the Bank's promise. He represents

that, during the first six months after he was discharged, he

concentrated his job-search efforts on obtaining reemployment

with the Bank.

Under Massachusetts law, a contract may be based on a

promise supported by reliance. Loranger Constr. Corp. v. E.F.

Hauserman Co., 376 Mass. 757, 760-61, 384 N.E.2d 176, 179 (1978)

("When a promise is enforceable in whole or in part by virtue of

reliance, it is a 'contract', and it is enforceable pursuant to a

'traditional contract theory' antedating the modern doctrine of

consideration"). However, "'the promisee must actually rely on

the promise,' and 'the reliance must have been induced by the

promise.'" Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432,

442 n.13, 597 N.E.2d 1017, 1023 n.13 (1992) (quoting E.A. Farns-

worth, Contracts 2.19 at 95-96 (1982)). Frankina presented no

competent evidence that he relied on the alleged promise.

Although Frankina's affidavit represents that he con-

centrated his job-search efforts, for the first six months, on

obtaining reemployment with the Bank, this ambiguous statement is

contradicted by his deposition testimony.6 On deposition,

6The affidavit allows that Frankina "made other attempts
outside the Bank during that time, [but that his] focus for those
first six months was on getting back into the Bank." We cannot
credit, as competent evidence of detrimental reliance, Frankina's
vague and conclusory statement that he "concentrated" and "fo-
cused" his efforts on obtaining reemployment. See Medina-Munoz

v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)

17

Frankina testified that he diligently pursued employment both

inside and outside the Bank "from the day [he] was let go to the

present," that he was not at any time less than diligent in

looking for work either inside or outside the Bank, that between

May 1989 and May 1990 he applied to over 200 employers, and that

he applied for jobs all over the United States and Canada.

Viewed in the context of the immediate and comprehensive job

search he described at deposition, the vague representation in

Frankina's affidavit that during the first six months he

"focused" and "concentrated" on getting reemployed by the Bank

was insufficient to generate a trialworthy issue on the detrimen-

tal reliance claim. See Medina-Munoz v. R.J. Reynolds Tobacco

Co., 896 F.2d 5, 8 (1st Cir. 1990); see also Babrocky v. Jewel

Food Co., 773 F.2d 857, 861-62 (7th Cir. 1985) (material issue of

fact cannot be demonstrated by submitting affidavit contradicting

sworn deposition testimony); Foster v. Arcata Assoc., Inc., 772

F.2d 1453, 1462 (9th Cir. 1985), cert. denied, 475 U.S. 1048

(1986) (same); S. G. Supply Co. v. Greenwood Int'l, Inc., 769 F.

Supp. 1430 (N.D. Ill. 1991) (same); Lowery v. Airco, Inc., 725 F.

Supp. 82, 85-86 (D. Mass. 1989) (same). Accordingly, summary

judgment on the claim for breach of a preferential hiring con-

tract was proper.

Affirmed; no costs to either party.

(summary judgment not forestalled by "conclusory allegations,
improbable inferences, and unsupported speculation").

18