USCA1 Opinion

 

 April 14, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2156 DAVID FRANKINA, Plaintiff, Appellant, v. FIRST NATIONAL BANK OF BOSTON, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Andrew A. Caffrey, Senior U.S. District Judge] __________________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Denise M. Leydon with whom Weston, Patrick, Willard & Redding was ________________ __________________________________ on brief for appellant. Richard P. Ward with whom Robert B. Gordon and Ropes & Gray were ________________ ________________ ____________ on brief for appellee. ____________________ ____________________ Per Curiam. The First National Bank of Boston ("Bank") Per Curiam. __________ terminated the employment of appellant David Frankina pursuant to a reduction in force. Frankina sued the Bank, asserting claims for age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621-34, and the Massachu- setts Fair Employment Practices Act, Mass. Gen. L. ch. 151B; breach of an alleged lifetime-employment contract; and breach of an alleged preferential-rehiring agreement. The district court granted summary judgment. We affirm. I I BACKGROUND BACKGROUND __________ We relate the facts in the light most favorable to appellant. See Newport Plaza Assoc. v. Durfee Attleboro Bank, ___ ____________________ ______________________ ___ F.2d ___, ___ (1st Cir. 1993), No. 92-1444, slip op. at 6 (1st Cir. Feb. 16, 1993). In 1962, Herb Ericson, a Bank person- nel officer, hired David Frankina as a Security-Cage Clerk. Ericson represented that Frankina would have a job for life unless he committed a criminal act against the Bank. Ericson also told Frankina that the Bank had never laid off an employee in its 200-year history. Throughout his twenty-seven year tenure with the Bank, Frankina became aware of no employee who was terminated except for criminal conduct. In 1989, the Bank launched a large-scale reduction in its work force due to mounting losses in its Treasury and Banking Services operation. The Bank completely reorganized the Banking Services component of the department, reconfiguring approximately 252 operational functions into approximately 135 functions. As a result, 119 positions were eliminated. Thomas Keane, Senior Operations Manager of the Capital Asset Services Department, determined that it was necessary to eliminate two of the seven positions in the Control Unit to eliminate functional redundancy. After reviewing recent employee performance evalua- tions, and based on his personal knowledge of employee work habits, Keane selected two Control Unit employees for dismissal: a thirty-five year old, and Frankina, then forty-seven. Keane concluded that the thirty-five year old lacked the necessary skills and had the least experience, and that Frankina was the least qualified employee in the Unit. Keane found that Frankina had relatively poor work habits, experienced difficulty in completing assigned tasks, and was least well-suited to perform the work duties in the reconfigured organization. Four of the five Control Unit employees who were retained were younger than Frankina.1 On May 19, 1989, Keane and Gerard Demone, Senior Human Resources Manager, met with Frankina to inform him of the layoff, describe the severance benefits, and offer professional job- search assistance. Demone told Frankina that job applications from laid-off employees would be given preferential treatment in ____________________ 1One retained employee was forty-nine years old at the time of the reorganization, two were forty-one, one was thirty-seven, and one was thirty-one. Frankina suggests that the forty-nine year old was not similarly situated because he served in a managerial capacity. 4 the Bank's hiring process. Frankina subsequently applied for more than fifty positions with the Bank. II II DISCUSSION DISCUSSION __________ A virtual "carbon copy" suit was brought by another former Bank employee in Goldman v. First Nat'l Bank of Boston, _______ ___________________________ ___ F.2d ___ (1st Cir. 1993), No. 92-1773 (1st Cir. Feb. 12, 1993). Thus, we rely extensively on our Goldman analysis. In _______ Goldman, we defined the applicable summary judgment standard as follows: We review a grant of summary judgment de __ novo, employing the same criteria incumbent ____ upon the district court in the first in- stance. Pedraza v. Shell Oil Co., 942 F.2d _______ ______________ 48, 50 (1st Cir. 1991), cert. denied, ___ ____ ______ U.S. ___, 112 S. Ct. 993 (1992). Summary judgment is appropriate where the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favor- able to the nonmoving party, reveals no genu- ine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); ___ Canal Ins. Co. v. Benner, 980 F.2d 23, 25 _______________ ______ (1st Cir. 1992); see also Mesnick v. General ___ ____ _______ _______ Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), _________ cert. denied, ___ U.S. ___, 112 S. Ct. 2965 ____ ______ (1992). The nonmoving party "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . must set forth specific facts showing that there is a genu- ine issue for trial." Fed. R. Civ. P. 56(e). See Anderson v. Liberty Lobby, Inc., 477 U.S. ___ ________ ___________________ 242, 248 (1986). There is no trialworthy issue unless there is enough competent evi- dence to enable a finding favorable to the nonmoving party. Id. at 249 (citing First ___ _____ Nat'l Bank of Arizona v. Cities Service Co., _____________________ __________________ 5 391 U.S. 253, 288-89 (1968)). Moreover, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allega- tions, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds ____________ _____________ Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). ___________ Goldman, slip op. at 4-5. _______ A. Age Discrimination Claims A. Age Discrimination Claims _________________________ Frankina maintains that he adduced enough evidence to generate a trialworthy issue as to whether the termination of his employment was motivated by age discrimination, and argues that the district court impermissibly weighed the competing evidence rather than viewing it in the light most favorable to him. 1. The Burden-Shifting Paradigm 1. The Burden-Shifting Paradigm ____________________________ The plaintiff bears the ultimate burden of proving that his age was the determinative factor in his discharge. Mesnick _______ v. General Electric Co., 950 F.2d 816, 823 (1st Cir. 1991), cert. ____________________ ____ denied, ___ U.S. ___, 112 S. Ct. 2965 (1992). "Absent direct ______ evidence of age discrimination, the familiar burden-shifting framework established in [McDonnell Douglas] comes into play." __________________ Goldman, slip op. at 6. See McDonnell Douglas Corp. v. Green, _______ ___ ________________________ _____ 411 U.S. 792, 802-05 (1973). As we explained in Goldman: _______ First, the plaintiff must make a prima facie showing of discrimination; that is, [Frank- ina] must demonstrate that he (1) was at least forty years of age, (2) met the employ- er's legitimate job performance expectations, (3) experienced adverse employment action, and (4) was replaced by a person with roughly equivalent job qualifications. A plaintiff whose employment was terminated in the course 6 of a reduction in force need not demonstrate that he was replaced, but may show that the ________ employer did not treat age neutrally or that younger persons were retained in the same position. Establishment of the prima facie case creates a presumption that the employer un- lawfully discriminated against the employee, and the burden of production shifts to the defendant-employer to articulate some legiti- mate, nondiscriminatory reason for the ter- mination. The burden of persuasion remains with the plaintiff-employee at all times. The presumption of unlawful age discrim- ination generated by the plaintiff-employee's prima facie showing dissipates, however, provided the employer sustains its burden of production; the plaintiff-employee must then demonstrate that the proffered reason for the adverse employment action was simply a pre- text for age discrimination. The plaintiff must do more than cast doubt on the employ- er's justification for the challenged action; there must be a sufficient showing that dis- criminatory animus motivated the action. Direct or indirect evidence of discriminatory motive may do, but the evidence as a whole must be sufficient for a reasonable fact- finder to infer that the employer's decision was motivated by age animus. Under First Circuit caselaw, the plain- tiff-employee must adduce minimally suffi- cient evidence of pretext and discriminatory ___ animus. A showing that the employer's justi- fication was not the actual motive may be enough if the facts and circumstances raise a reasonable inference of age discrimination. Nevertheless, the plaintiff-employee cannot avert summary judgment if the record is de- void of [both] direct and circumstantial ____ ___ evidence of discriminatory animus on the part of the employer. Goldman, slip op. at 6-8 (internal citations and quotation marks _______ omitted). 7 It is not disputed that Frankina made out a prima facie age discrimination claim, nor that the Bank articulated a nondis- criminatory motive for Frankina's dismissal, i.e., that economic ____ considerations necessitated a reduction in force and Frankina was the "least qualified employee" in his unit. The dispute on appeal centers on the third stage of the McDonnell Douglas _________________ analysis. The district court acknowledged that Frankina present- ed some evidence to counter the Bank's characterization of him as a poor performer, but ruled that Frankina presented insufficient evidence of pretext and discriminatory animus. Accordingly, the Bank was awarded summary judgment on Frankina's state and federal age-discrimination claims.2 ____________________ 2The complaint alleged parallel claims under the ADEA and its Massachusetts counterpart, Mass. Gen. L. ch. 151B. On appeal, Frankina asserts for the first time that Massachusetts applies a less onerous standard of proof to claims brought under the Massachusetts statute than this court applies to ADEA claims, see infra note 4, and that his state claim therefore must be ___ _____ addressed separately. However, Frankina did not distinguish these claims in his opposition to summary judgment, and the district court analyzed them collectively, noting only that "courts apply the same analysis to state and federal discrimina- tion claims." We decline to address this newfound claim, as "theories not raised squarely in the district court cannot be surfaced for the first time on appeal." McCoy v. Massachusetts _____ _____________ Inst. of Technology, 950 F.2d 13, 22 (1st Cir. 1991), cert. _____________________ _____ denied, ___ U.S. ___, 112 S. Ct. 1939 (1992); see also Poliquin ______ ___ ____ ________ v. Garden Way, Inc., ___ F.2d ___ (1st Cir. 1993), Nos. 92-1115, _________________ 92-1116, slip op. at 8 (1st Cir. Mar. 24, 1993) (explaining that in the "winnowing process" of litigation, the raise-or-waive rule enables courts to "narrow what remains to be decided[;] [i]f lawyers could pursue on appeal issues not properly raised below, there would be little incentive to get it right the first time and no end of retrials"). Although the raise-or-waive rule may be relaxed in an exceptional case when a miscarriage of justice would otherwise result, see Johnston v. Holiday Inns, Inc., 595 ___ ________ ___________________ F.2d 890, 894 (1st Cir. 1979) (quoting Dobb v. Baker, 505 F.2d ____ _____ 1041, 1044 (1st Cir. 1974)), our holding that Frankina failed to adduce sufficient evidence of pretext, see infra Part II.A.2, ___ _____ 8 ____________________ would make summary judgment proper even under the less onerous standard of proof urged by Frankina. 9 2. Evidence of Pretext 2. Evidence of Pretext ___________________ "In assessing pretext, [our] 'focus must be on the perception of the decisionmaker,' that is, whether the employer ________ believed its stated reason to be credible." Mesnick, 950 F.2d at _______ 824 (quoting Gray v. New England Tel. & Tel. Co., 792 F.2d 251, ____ ____________________________ 256 (1st Cir. 1986)) (emphasis added). Frankina does not dispute that economic considerations necessitated a reduction in force, but argues that he produced sufficient evidence to rebut the Bank's contention that he was the least qualified employee in his unit. Frankina produced ample evidence that the Bank did not consider his work performance unsatisfactory in absolute terms: he was given merit salary increases on a regular basis throughout his tenure; none of his performance evaluations indicated that his job performance was unacceptable; his overall performance rating in 1986 was "outstanding," the highest rating available; and he received no warnings relating to his work performance. The Bank's justification for Frankina's discharge, however, was not that his performance was unsatisfactory in an absolute sense, but that he was the least qualified employee in the Control Unit. _____ _________ Thus, refutation of the Bank's proffered justification required evidence permitting a trier of fact reasonably to conclude that Frankina's abilities and qualifications were equal or superior to employees who were retained. Goldman, slip op. at 10. As _______ 10 Frankina made no such evidentiary showing in the district court, he failed to demonstrate a trialworthy issue.3 3. Evidence of Age Animus 3. Evidence of Age Animus ______________________ "Evidence of age animus need not be of the 'smoking gun variety,' but the totality of the circumstances must permit a reasonable inference that the employer's justification for the challenged action was a pretext for age discrimination." Gold- _____ man, slip op. at 11 (quoting Connell v. Bank of Boston, 924 F.2d ___ _______ _______________ 1169, 1175 (1st Cir.), cert. denied, ___ U.S. ___, 111 S. Ct. _____ ______ 2828 (1991)). Frankina contends that an inference of dis- criminatory animus on the part of the Bank arises from the following evidence: Frankina and six other former Bank employees dismissed pursuant to the reduction in force were the oldest employees and had the longest service records in their respective units; the termination of older, more costly employees would optimize the cost reductions achieved through the reduction in force; of the 119 terminated employees, 41% were over forty years of age, but only 24% of those subsequently rehired were over forty; under a new retirement plan introduced in 1989, which required the Bank annually to contribute a percentage of each employee's salary to a "Cash Balance" account, the Bank deposited a decreasing percentage of salary to an employee's account as the employee reached the upper service brackets; and the Bank dis- ____________________ 3Although Frankina argues on appeal that his performance evaluations in 1987 and 1988 were equivalent to those of a younger colleague who was retained, he waived the argument by failing to raise it below. See supra note 2. ___ _____ 11 banded the "Quarter Century Club," a Bank-sponsored social organization for employees with twenty-five years or more of service. We considered the identical evidence in Goldman, and _______ concluded that: at best the record reveals that a small num- ber of those discharged were among the older employees in their respective units, that the Bank implemented a new pension plan which has in no measure been shown to have been disad- vantageous to older employees, and that the Bank stopped funding the Quarter Century Club. The gap between this evidence and an inference of age discrimination could only be bridged by impermissible inference. Id. at 15-16. We reach the same conclusion here, based on the ___ grounds detailed in Goldman. See id. at 11-16. As the evidence _______ ___ ___ presented in the district court was insufficient to enable a factfinder reasonably to conclude that the articulated reason for Frankina's termination was pretextual or that his termination was motivated by age animus, we affirm the grant of summary judgment on the age discrimination claims.4 B. Breach of Lifetime Employment Contract B. Breach of Lifetime Employment Contract ______________________________________ Next, Frankina argues that summary judgment was improp- er on his claim for breach of a lifetime employment contract. The district court found that Frankina failed to generate a ____________________ 4Frankina argues that our cases place a more onerous burden on an ADEA plaintiff than that envisioned by the Supreme Court in McDonnell Douglas and Texas Dep't of Community Affairs v. Bur- _________________ _________________________________ ____ dine, 450 U.S. 248 (1981). As we rejected this argument in ____ Goldman, we do not discuss it here. See Goldman, slip op. at 8 _______ ___ _______ n.4. 12 trialworthy issue as to whether the person who hired Frankina possessed actual or apparent authority to bind the Bank to a lifetime employment contract. We agree. Frankina maintains that Bank personnel officer Herb Ericson offered him lifetime employment by representing that the Bank had never laid off employees and that Frankina would have a job for life unless he committed a criminal act against the Bank. Moreover, he argues, the concept of lifetime employment was reinforced throughout his tenure at the Bank as he never knew of an employee being dismissed except for criminal conduct. For present purposes, we assume, without deciding, that Ericson's representations were sufficient to impart an offer of lifetime employment to Frankina. As we stated in Goldman, however: _______ Under Massachusetts law, a lifetime employ- ment contract cannot be found absent evidence that it was made or ratified by an officer or agent with actual or apparent authority to bind the employer to a lifetime contract. See Rydman v. Dennison Mfg. Co., 373 Mass. ___ ______ __________________ 855, 366 N.E.2d 763 (1977); Porshin v. Snid- _______ _____ er, 349 Mass. 653, 654, 212 N.E.2d 216, 217 __ (1965); Thalin v. Friden Calculating Mach. ______ _________________________ Co., 338 Mass. 67, 70, 153 N.E.2d 658, 660 ___ (1958); Simonelli v. Boston Hous. Auth., 334 _________ ___________________ Mass. 438, 440-41, 137 N.E.2d 670, 672-73 (1956). Id. at 16-17. As the present record contains no evidence that ___ the Bank invested Ericson with actual authority to extend a binding offer of lifetime employment to anyone, we need only determine whether Frankina has demonstrated a genuine factual dispute material to the issue of apparent authority. 13 Apparent authority "results from conduct by the princi- __ ___ _______ pal which causes a third person reasonably to believe that a ___ particular person . . . has authority to enter into negotiations or to make representations as his agent." Hudson v. Massachu- ______ _________ setts Property Ins. Underwriting Ass'n, 386 Mass. 450, 457, 436 ______________________________________ N.E.2d 155, 159 (1982) (quoting W.A. Seavey, Agency 8D at p. 13 ______ (1964)) (emphasis added); accord Goldman, slip op. at 17. ______ _______ Apparent authority "'cannot be established by the putative agent's own words or conduct, but only by the principal.'" ____ __ ___ _________ Sheinkopf v. Stone, 927 F.2d 1259, 1269 (1st Cir. 1991) (quoting _________ _____ Sheldon v. First Fed. Savings & Loan Ass'n, 566 F.2d 805, 808 _______ _________________________________ (1st Cir. 1977)) (emphasis added). Thus, as in Goldman, slip op. _______ at 17, we must examine the record for evidence of conduct on the part of the Bank that could have led Frankina reasonably to believe that Ericson was authorized to extend an offer of life- time employment. "A person appointed to a position with generally recog- nized functions may be found to possess apparent authority to perform the duties ordinarily entrusted to one occupying that position." Id. (citing Restatement (Second) of Agency 27 cmt. ___ ______________________________ a (1958)). As a personnel officer, Ericson undoubtedly had actual or apparent authority to hire Bank employees. Under Massachusetts law, however, ordinary authority to hire is insuf- ficient to bind an employer to a lifetime employment contract. Id. at 18-19 (citing cases). Thus, holding Ericson out as its ___ agent for general hiring purposes did not constitute conduct 14 warranting an objectively reasonable belief that Ericson was authorized to offer lifetime employment with the Bank. See id. ___ ___ at 19. Under rare circumstances, apparent authority to enter a lifetime employment contract may be found where it is customary for a particular officer or agent to make lifetime contracts. Id. The Bank submitted competent affidavits attesting that ___ Ericson had no actual authority to bind the Bank to a lifetime contract and that no employee has a lifetime contract with the __ ________ Bank. Nonetheless, Frankina contends that an inference that lifetime contracts were commonplace at the Bank arises from the "widely discussed fact" that, prior to 1989, no employee had ever been terminated other than for criminal conduct. Under Massa- chusetts law, however, "[l]ifetime contracts are [considered] extraordinary in their nature and strong proof is required to establish their due formation." Gregory v. Raytheon Serv. Co., _______ ___________________ 27 Mass. App. Ct. 1170, 1171, 540 N.E.2d 694, 695 (1989); see ___ Goldman, slip op. at 20. "Although widespread knowledge that the _______ Bank had never laid off an employee except for criminal conduct might prompt the legitimate belief that employment at the Bank was relatively secure, it cannot be considered competent proof, let alone 'strong proof,' that any Bank employee had a lifetime employment contract." Id. (internal citation omitted). Absent ___ evidence that any employee at any level under any circum- stances had a lifetime contract with the Bank, we must con- 15 clude that a rational factfinder could not reasonably find that lifetime employment contracts with the Bank were customary. Id. ___ Although Frankina correctly asserts that an agent's authority to make binding promises is a question of fact, see ___ Eastern Renovating Corp. v. Forhan, 391 F. Supp. 204, 205 (D. ________________________ ______ Mass. 1975); Salem Bldg. Supply Co. v. J.B.L. Constr. Co., 10 ________________________ ___________________ Mass. App. Ct. 360, 365, 407 N.E.2d 1302, 1306 (1980), he pre- sented no evidence which would permit a factfinder reasonably to conclude, consistent with Massachusetts law, that Ericson had actual or apparent authority to bind the Bank to a lifetime employment contract. Nor did Frankina adduce evidence that anyone else, with actual or apparent authority to bind the Bank, subsequently ratified any unauthorized offer of lifetime employ- ment. See Goldman, slip op. at 20-21. As no trialworthy issue ___ _______ was raised, summary judgment was proper on the lifetime employ- ment claim.5 C. Breach of Preferential Hiring Contract C. Breach of Preferential Hiring Contract ______________________________________ Finally, Frankina contends that there is a disputed issue of material fact as to whether the Bank breached a promise to accord preferential treatment to any reemployment application he might file. Although the Bank denies any such promise, we assume for present purposes, as did the district court, that such a promise was made. The district court ruled that any such ____________________ 5Accordingly, we need not address the claim that Frankina changed his position in reliance on a reasonable belief that Ericson had authority to offer lifetime employment. 16 promise would have lacked the consideration required to support a contract under Massachusetts law. Frankina contends that he relied to his detriment on the Bank's promise. He represents that, during the first six months after he was discharged, he concentrated his job-search efforts on obtaining reemployment with the Bank. Under Massachusetts law, a contract may be based on a promise supported by reliance. Loranger Constr. Corp. v. E.F. _______________________ ____ Hauserman Co., 376 Mass. 757, 760-61, 384 N.E.2d 176, 179 (1978) ______________ ("When a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract', and it is enforceable pursuant to a 'traditional contract theory' antedating the modern doctrine of consideration"). However, "'the promisee must actually rely on the promise,' and 'the reliance must have been induced by the promise.'" Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, ________________________ ________ 442 n.13, 597 N.E.2d 1017, 1023 n.13 (1992) (quoting E.A. Farns- worth, Contracts 2.19 at 95-96 (1982)). Frankina presented no _________ competent evidence that he relied on the alleged promise. Although Frankina's affidavit represents that he con- centrated his job-search efforts, for the first six months, on obtaining reemployment with the Bank, this ambiguous statement is contradicted by his deposition testimony.6 On deposition, ____________________ 6The affidavit allows that Frankina "made other attempts outside the Bank during that time, [but that his] focus for those first six months was on getting back into the Bank." We cannot credit, as competent evidence of detrimental reliance, Frankina's vague and conclusory statement that he "concentrated" and "fo- cused" his efforts on obtaining reemployment. See Medina-Munoz ___ ____________ v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) ___________________________ 17 Frankina testified that he diligently pursued employment both inside and outside the Bank "from the day [he] was let go to the present," that he was not at any time less than diligent in looking for work either inside or outside the Bank, that between May 1989 and May 1990 he applied to over 200 employers, and that he applied for jobs all over the United States and Canada. Viewed in the context of the immediate and comprehensive job search he described at deposition, the vague representation in Frankina's affidavit that during the first six months he "focused" and "concentrated" on getting reemployed by the Bank was insufficient to generate a trialworthy issue on the detrimen- tal reliance claim. See Medina-Munoz v. R.J. Reynolds Tobacco ___ ____________ ______________________ Co., 896 F.2d 5, 8 (1st Cir. 1990); see also Babrocky v. Jewel ___ ___ ____ ________ _____ Food Co., 773 F.2d 857, 861-62 (7th Cir. 1985) (material issue of ________ fact cannot be demonstrated by submitting affidavit contradicting sworn deposition testimony); Foster v. Arcata Assoc., Inc., 772 ______ ____________________ F.2d 1453, 1462 (9th Cir. 1985), cert. denied, 475 U.S. 1048 _____ ______ (1986) (same); S. G. Supply Co. v. Greenwood Int'l, Inc., 769 F. ________________ _____________________ Supp. 1430 (N.D. Ill. 1991) (same); Lowery v. Airco, Inc., 725 F. ______ ___________ Supp. 82, 85-86 (D. Mass. 1989) (same). Accordingly, summary judgment on the claim for breach of a preferential hiring con- tract was proper. Affirmed; no costs to either party. Affirmed; no costs to either party. __________________________________ ____________________ (summary judgment not forestalled by "conclusory allegations, improbable inferences, and unsupported speculation"). 18