Brady, J.
The plaintiff, terminated by his employer Courier Corporation (Courier) in October 1991, brings this action against Courier and two managerial employees, Judith Booth and Douglas Hosking. The amended complaint is in five counts: breach of contract against Courier (Count I); promissory estoppel against Courier (Count II); intentional interference with advantageous relations against Booth and Hosk-ing (Count III); negligent misrepresentation against Courier (Count IV); and defamation against Booth and *38 Hosking (Count V). Defendants now move for summary judgment. For the reasons stated herein, I allow defendants’ motion.
The basic facts are these. In May 1990, while working for another employer in Washington, D.C., the plaintiff was recruited by Judith Booth of Courier to serve in a managerial capacity as the director of electronic integrated publishing services for the Courier Connection, a new division of Courier, of which Booth was in charge. In the course of recruiting plaintiff, Booth made certain statements that the job would be a “significant career opportunity,” that it would be a job “for a long period of time” as long as he performed, that it would involve “significant personal growth,” and that it would last “over several years.” Plaintiff decided that this would be a significant opportunity, left his job in Washington and came to work for Courier in Boston beginning June 1, 1990. Ms. Booth confirmed plaintiffs employment in a letter of May 9, 1990 reciting a salary of $58,000 per year and other details. The letter contained no definite period of employment.[1]
Booth was in charge of the Courier Connection and was plaintiffs immediate superior. Her initial review of the plaintiff on February 8, 1991 was reasonably good, and she told him that she would recommend him for a $7,000 raise. Plaintiff understood that a committee had to approve the raise, and that Booth could not make the final determination.
By June 1991, Booth had lost confidence in the plaintiff. She assigned him to different duties, which plaintiff considered a demotion, the most significant of which was to work with Douglas Hosking, a Courier senior vice president who was starting another Courier Connection faciliiy in California. Hosking had operational and managerial responsibility for the California facility. In October 1991, for what Booth and Hosking felt was unsatisfactory job performance, plaintiff was terminated. Plaintiff, on the other hand, blames Courier’s business problems on Booth’s lack of managerial competence; and argues that she scapegoated him to cover her culpability.
Breach of Contract (Count I)
Count 1 alleges that his firing constituted a breach by defendant of the implied covenant of good faith and fair dealing in defendant’s employment contract with plaintiff. The plaintiff was an employee at will, and as such could be terminated for almost any reason or no reason at all. Jackson v. Action for Boston Community Development, Inc., 403 Mass. 8, 9 (1988). This case does not fall into one of the few recognized exceptions to the rule, e.g., Fortune v. Nat. Cash Reg. Co., 373 Mass. 96 (1977) (depriving plaintiff of earned commissions); DeRose v. Putnam Management Co., 398 Mass. 205 (1986) (violation of public policy); and G.L.c. 151B, §4 (discrimination).
Ms. Booth’s statements to plaintiff which allegedly persuaded him to join Courier in 1990 are too vague and non-specific to create a lifetime contract or even one for “several years.” The statements allegedly made by her are “commonplace remarks” which plaintiff seeks to inflate into a contract “by a strenuous exercise in the self-hypnotizing rhetoric of advocacy.” Gregory v. Raytheon, 27 Mass.App.Ct. 1170, 1171 (1989). This case is a far cry from Boothby v. Texon, Inc., 414 Mass. 468 (1993), relied upon by plaintiff. “Lifetime contracts are extraordinary in their nature and strong proof is required to establish their due formation.” Gregory, at 1171. Such proof is entirely lacking here.
Plaintiff makes a separate argument that Booth’s “promise” to him to increase his salary by $7,000 is enforceable. However, plaintiff conceded in his deposition that he knew that this had to be approved by a committee and that Booth could not make the final determination. The committee never approved the raise. No triable issue is presented on Count I.
Promissory Estoppel (Count II)
Promissory estoppel is simply a contract theory where plaintiffs reliance suffices for consideration. The theory, however, does not work on these facts because Booth’s alleged promises Eire too vague to be enforceable. See Treadwell v. John Hancock Mutual Life Insurance Co., 666 F.Supp. 278, 287 (D.Mass. 1987). Even in Boothby, where the facts were considerably stronger, the case did not get to the jury on promissory estoppel but rather express contract.
Intentional Interference With Advantageous Relations (Count III)
The plaintiff argues that Booth gave him a negative evaluation to deflect blame for the Courier Connection’s poor performance from her. He also argues that Hosking was motivated by dislike of people with different lifesiyles, and made a comment to another employee which, plaintiff suggests, shows animosity towards gays. Plaintiff is bisexual. Proof of this tort requires proof, inter alia, of “improper purpose” or “improper means.” United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816 (1990).
Nothing in the summary judgment record before me indicates that the plaintiff can prove that Booth had an “improper purpose.” Nothing appears in the record other than that she was acting within her managerial responsibilities in assessing plaintiffs performance. That plaintiff felt that the fault lay with Booth rather than himself does not create a triable issue. Furthermore, there is no evidence that Booth used any “improper means” to effectuate plaintiffs dismissal.
The evidence with respect to Hosking is that he allegedly asked another employee, Mr. Ciasen, if plaintiff was gay or had AIDS. A rational factfinder could not determine, on this evidence, that Hosking acted *39 improperly. Merely asking a question about one’s sexual orientation does not support an inference of improper motive. Clasen’s personal opinion that Hosk-ing was intolerant of people with “weird” lifestyles is simply inadmissible and accordingly does not help the plaintiff.
Both Booth and Hosking were, on this record, acting within the scope of their employment and for legitimate and privileged reasons. ”[A]n employee’s supervisor is ‘privileged to act as he did unless he acted out of malevolence . . .’” Boothby, at 487. There is no showing that the defendants’ actions were unrelated to any legitimate corporate interest.
Negligent Misrepresentation (Count IV)
This count must fail because there is no evidence that defendant furnished the plaintiff with “false information.” Lawton v. Dracousis, 14 Mass.App.Ct. 164, 171 (1982). Booth’s general statements recited above are matters of opinion only, and not actionable.
Defamation (Count V)
A supervisor’s subjective assessment of an employee’s job performance is not actionable defamation. Underwood v. Digital Equipment Corp., 576 F.Supp. 213, 217 (D.Mass. 1983). One cannot sue his boss for expressing negative opinions about job performance. Booth and Hosking had a conditional privilege to disclose their evaluation of plaintiffs job performance to others at Courier with a legitimate interest in such matters (i.e., senior management). There is no evidence that either did anything to lose the privilege. No triable issue exists on this count.
ORDER
For the reasons stated above defendants’ motion for summary judgment is ALLOWED.

 Where an employment contract contains no definite period of employment, it establishes employment at will. Jackson v. Action for Boston Community Development, Inc., 403 Mass. 8, 9 (1988).